FELDMAN v FELDMAN

1. DIVORCE—CHILD CUSTODY—APPEAL AND ERROR—EVIDENCE—DIS-
   CRETION.

   A trial court's custody adjudication will not be disturbed unless
   the trial judge made findings of fact against the great weight of
   the evidence or committed a palpable abuse of discretion or a
   clear legal error on a major issue (MCLA 722.28).

2. DIVORCE—CHILD CUSTODY—BEST INTEREST OF CHILDREN—MORAL
   FITNESS.

   Moral fitness is only one of the factors which a court considers in
   determining the best interest of the child in custody disputes;
   therefore, the best interests of the children would be served by
   giving custody to the plaintiff who had admittedly engaged in
   two adulterous affairs where the plaintiff had been a good
   mother, had been solely responsible for her sons' religious
   education, and evidence damaging to the defendant husband
   regarding his mental health had been introduced.

3. DIVORCE—PROPERTY AWARD—DISCRETION—APPEAL AND ERROR.

   The trial court has wide discretion in dividing property of a
   marital estate and the Court of Appeals will not reverse or
   modify a property award in a divorce action unless convinced
   that a different result would have been reached had the Court
   of Appeals occupied the position of the trial court.

4. DIVORCE—PROPERTY AWARD—SOURCE OF PROPERTY—MARITAL AS-
   SETS.

   A court is not required to return property to the party who
   brought it into the marriage; property may be considered a
   marital asset even though one spouse accumulated it prior to
   marriage; therefore, the trial court properly ruled that the

REFERENCES FOR POINTS IN HEADNOTES

[1] 24 Am Jur 2d, Divorce and Separation §§ 791, 793, 795, 839 *et seq.,*
   868.

[2] 24 Am Jur 2d, Divorce and Separation §§ 787, 788.
   Religion as factor in awarding custody of child. 66 ALR2d 1410.

[3, 4] 24 Am Jur 2d, Divorce and Separation §§ 839 *et seq.,* 868, 929,
   933.

total equity of $35,350 in the parties' home was a marital asset even though the defendant husband had made a $25,000 down payment from funds accumulated prior to the marriage.

Appeal from Oakland, William R. Beasley, J. Submitted Division 2 December 10, 1973, at Lansing. (Docket No. 17508.) Decided February 11, 1974. Leave to appeal denied, 391 Mich 823.

Complaint by Nada Sue Feldman against Lester M. Feldman for divorce. Judgment of divorce for plaintiff. Defendant appeals. Affirmed in part, reversed in part.

*Chase, Portney & Geller,* for plaintiff.

*Watson, Wunsch & Keidan, P. C.,* for defendant.

Before: J. H. GILLIS, P. J., and R. B. BURNS and R. H. CAMPBELL,* JJ.

. J. H. GILLIS, P. J. Plaintiff, Nada Sue Feldman, and defendant, Lester M. Feldman, married in 1965, are the parents of two sons, Eric, age 7, and Darin, age 4. Plaintiff brought her action for divorce in August, 1971. In June, 1973, the trial court granted plaintiff a no-fault divorce pursuant to MCLA 552.6; MSA 25.86, awarding her custody of the children and dividing the marital property. From this judgment defendant appeals. Since a divorce action is equitable in nature, our review is *de novo. Hutchins v Hutchins,* 36 Mich App 675; 194 NW2d 6 (1971).

First, defendant contends the trial court erred in granting plaintiff custody of the children. We do not disturb a trial court's child custody adjudication "unless. the trial judge made findings of fact

---

* Circuit judge, sitting on the Court of Appeals by assignment.

against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCLA 722.28; MSA 25.312(8). The children's best interest is the guiding factor in child custody matters. MCLA 722.25; MSA 25.312(5); *Kurtz v Kurtz,* 32 Mich App 366; 188 NW2d 653 (1971).[1]

" 'Best interests of the child' means the sum total of the following factors to be considered, evaluated and determined by the court:

"(a) The love, affection and other emotional ties existing between the competing parties and the child.

"(b) The capacity and disposition of competing parties to give the child love, affection and guidance and continuation of the educating and raising of the child in its religion or creed, if any.

"(c) The capacity and disposition of competing parties to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

"(d) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.

"(e) The permanence, as a family unit, of the existing or proposed custodial home.

"(f) The moral fitness of the competing parties.

"(g) The mental and physical health of the competing parties.

"(h) The home, school and community record of the child.

"(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference.

"(j) Any other factor considered by the court to be

---

[1] The Child Custody Act of 1970, MCLA 722.21 *et seq.;* MSA 25.312(1) *et seq.,* repeals the preference for maternal custody of children under the age of 12. MCLA 722.541; MSA 25.311 [repealed by MCLA 722.29; MSA 25.312(9)].

relevant to a particular child custody dispute." MCLA 722.23; MSA 25.312(3).[2]

The keystone of defendant's argument is the alleged moral unfitness of his wife. Considerable testimony supports this allegation. Plaintiff admitted that during 1970 and 1971 she engaged in adulterous affairs with two men. Defendant alleged his wife committed adultery with a third man, but this was denied. Uncontroverted testimony of defendant and a third party also indicates plaintiff used profanity several times in the presence of the children. Defendant testified that his wife frequently walked around the house in front of the children partially or totally undressed. The trial court in its findings of fact stated:

"With respect to the plaintiff, the court finds her to be lacking in credibility and judgment. She appears to be an immature, selfish young lady. It has been suggested that she possesses credibility because on trial she was candid and frank about her marital misconduct. In the circumstances of this case, where the record shows a family conference, including all four parents of the parties, concerning her infidelity toward her husband and in the light of the photographs taken of her and her man friend outside of his apartment late at night, she was hardly in a position other than to admit her marital misconduct. This court is also satisfied that she was guilty of marital misconduct during the Florida vacation in the summer of 1968. This court is satisfied from the testimony that plaintiff made a regular practice of deceiving and lying to defendant."

Two points should be made on plaintiff's behalf. First, there were no allegations or proof of any marital misconduct by plaintiff since 1971. Second, Mrs. Feldman's use of profanity apparently oc-

---

[2] Factor (i) was correctly ruled to be inapplicable here because of the tender age of the children.

curred at times of marital discord; her swearing was directed at her husband, not the children. However, even conceding these two "plus points", we think, as did the trial court, that as between plaintiff and defendant, defendant is the more morally fit.

But, "(f)", moral fitness of the competing parties, is only one of ten factors which the court considers in child custody disputes. It is important to place the highly prejudicial evidence against plaintiff in the proper perspective. This the trial court did. Neighbors, babysitters and teachers testified on behalf of plaintiff. Their testimony leads us, as it did the trial court, to this conclusion: plaintiff has been a good mother to her two sons, who, for their ages, are normal well-adjusted children. The trial judge found that,

> "plaintiff mother has carried the bulk of the day-to-day responsibilities for the children's education, medical care and maintenance. The evidence indicates that as an interested, concerned parent she keeps contact with the school teachers and with the children's doctors. The court is satisfied that plaintiff has kept the children clean, properly dressed, adequately fed, and has not left them unattended. The court believes that she has a closer, more intimate relationship with the children than defendant."

In addition, plaintiff has been solely responsible for her sons' religious education; she enrolled them in Hebrew school and took them to synagogue on high holy days.

Lastly, evidence damaging to defendant was introduced regarding his mental health. Plaintiff testified that Mr. Feldman attempted suicide in 1966 by drinking Bowlene, a toilet bowl cleaner. Defendant denied this, but hospital records later introduced confirmed plaintiff's testimony.

In ruling that the best interests of the Feldman children would be served by giving custody to the plaintiff, the trial court concluded:

"In this case the plaintiff has, in most * * * respects, shown herself to be a concerned, interested mother. The court also notes that plaintiff has appeared to recognize that her behavior with other men has not been a good example for the parties' sons. This court believes plaintiff's feelings for the children are genuine and that she will not repeat the behavior that has jeopardized her right to custody of them. As between the parties, this court believes that although it is a close question, the evidence indicates that the best interests of the children will be best served by placing their custody in their mother."

We agree that the question of custody here is a close one. Being a close question, it is clear that the trial court's decision was not against the great weight of the evidence. Therefore, we uphold the court's decision as to custody.

Secondly, defendant challenges the division of the marital property. He argues that the court erred in including the total equity in the parties' residence in Southfield in the marital estate. The total equity in the home was determined to be $35,350. The court ordered the property sold, the net proceeds to be applied as follows: (1) $2,700 to pay plaintiff's attorney fees; (2) $25,000 to plaintiff; and (3) the balance to be divided equally between plaintiff and defendant. The $25,000 down payment was paid by defendant from his funds, most of which were accumulated prior to the marriage. Defendant contends that this $25,000 is not a marital asset, and that the court should have only considered the remaining equity of $10,350 when making its property division. In essence, defendant is saying that the court is required to restore to a

husband all property (or its value if converted to another asset) he owned prior to the marriage. We disagree.

The trial court has wide discretion in dividing the property of the marital estate. *Czuhai v Czuhai,* 30 Mich App 208; 186 NW2d 32 (1971). We will not reverse or modify a trial court's property award unless convinced that we would have reached a different result in its position. *Paul v Paul,* 362 Mich 43; 106 NW2d 384 (1960); *Dral v Dral,* 8 Mich App 663; 155 NW2d 236 (1967).

"The division of property in a divorce action is not governed by any rigid rules or mathematical formula. Each case depends on the particular facts involved. * * *

"The portion of property awarded to each party depends upon all of the equitable factors involved, including the following: source of property, contribution towards its acquisition, the years of married life, the needs of the parties, their earning ability and also the cause for divorce." *Johnson v Johnson,* 346 Mich 418, · 431; 78 NW2d 216, 222 (1956).

The fact that the source of property and contributions towards its acquisition are only two of several factors to be considered in the property settlement indicates that courts in this state are not required to return property to the party who brought it into the marriage. Michigan statutory law is in accord.[3] Therefore, property is considered a marital asset even though the spouse accumulated it prior to the marriage. *Hutchins v Hutchins, supra,* confirms the view we take here. There the marital property consisted primarily of a $5,-351 antique collection, most of which the husband

---

[3] MCLA 552.19; MSA 25.99, provides the court *may* restore to a party that property which he owned prior to marriage. Thus, restoration is only discretionary.

had accumulated before his marriage, and a home valued at approximately $18,000, which the husband owned prior to the marriage. In its settlement the trial court ordered the antique collection sold and the proceeds divided equally, and awarded each party a one-half interest in the realty. Thus, a considerable portion of that property which the husband owned prior to marriage was not restored to him. This Court approved that distribution. In the case at bar the trial court correctly ruled that the total equity of $35,350 in the Southfield home ˙was a marital asset, and its division of that asset was proper.[4] We have reviewed defendant's other assignments of error with regard to the property settlement and find them without merit.

Lastly, there is the question of alimony. The trial court ordered defendant to pay plaintiff $60 per week for six months. Prior to 1970, MCLA 552.23; MSA 25.103, prohibited a court award of alimony to an adulterous wife. This section has been recently amended and the alimony ban has been deleted. Alimony is now, in all instances, discretionary with the court. It is readily apparent that the Legislature did not feel that a spouse who commits a single act of adultery during the course of a marriage of long duration should be denied alimony. But that is not the case here. We do not think, considering the age of the plaintiff, the length of the marriage and the extensive marital misconduct on her part, that she should receive alimony. In our *de novo* review and pursuant to GCR 1963, 820.1(7), we direct the˙ trial court to enter an order striking the alimony award.

---

[4] It should be noted that defendant, owner of a custom drapery store valued at $115,000, was awarded all right, title and interest in this business, even though it had appreciated approximately $39,000 during the marriage.

Affirmed in part, reversed in part. No costs, neither party having prevailed in full.

All concurred.