WILCOX v WILCOX

Docket Nos. 43938, 47069. Submitted December 6, 1979, at Lansing.—
　Decided September 15, 1980. Leave to appeal applied for.

　　Plaintiff, Elizabeth Wilcox, sought a divorce from defendant, Kent
　　Wilcox. The Ingham Circuit Court, Thomas L. Brown, J.,
　　granted the divorce. As part of the divorce judgment, custody of
　　their two children, 9 and 12 years of age, was ordered to be
　　held jointly by plaintiff and defendant with physical custody of
　　the children to be with each parent on alternate weeks. As to
　　the division of the marital property, the court ordered that title
　　to the marital home be awarded to plaintiff, with the equity in
　　that home to be divided equally upon its sale or assignment,
　　upon plaintiff's death or remarriage or upon the younger child
　　reaching 18 years of age. Of the $73,000 in equity in two other
　　properties, defendant received $29,000, which represented one
　　half of the equity in these properties after that equity is
　　reduced by the $15,000 investment made by plaintiff in one of
　　the properties prior to the marriage. Out of his share, defen-
　　dant was ordered to pay $7,500 as alimony in gross.

　　　　Plaintiff appealed. Because the claim of appeal was not filed
　　within ten days of the entry of the trial court judgment, the
　　original appeal was limited, by reason of GCR 1963, 803.6, to
　　matters other than the question of the custody of the children.
　　Plaintiff sought delayed leave to appeal with respect to the
　　question of child custody. Delayed leave to appeal was denied
　　by the Court of Appeals. Docket No. 44423, order of May 29,

REFERENCES FOR POINTS IN HEADNOTES

[1-4, 6, 8-10, 13] 24 Am Jur 2d, Divorce and Separation § 799.
　"Split," "divided," or "alternative" custody of children. 92 ALR2d
　695.
[2, 9] 24 Am Jur 2d, Divorce and Separation § 790.
　59 Am Jur 2d, Parent and Child § 33.
[5] 24 Am Jur 2d, Divorce and Separation § 783.
　42 Am Jur 2d, Infants § 43.
[7] 5 Am Jur 2d, Appeal and Error § 868.
[11, 12] 24 Am Jur 2d, Divorce and Separation § 784.
　Child's wishes as factor in awarding custody. 4 ALR3d 1396.
[12] 24 Am Jur 2d, Divorce and Separation § 800.

1979. Plaintiff sought leave to appeal in the Supreme Court. In lieu of leave to appeal, the Supreme Court remanded the matter to the Court of Appeals for consideration as on leave granted. 407 Mich 858 (1979). The appeal on leave granted was consolidated for consideration with the prior appeal as of right.
*Held:*

1. The Michigan Child Custody Act neither prevents nor requires joint custody of children upon the divorce of the parents.

2. Joint custody over a child should be awarded where the parents agree that a joint custody arrangement is in the best interests of the child. An objection by one of the parents that joint custody is not in the best interests of the child does not, however, preclude an award of joint custody.

3. Joint legal custody is differentiated from joint physical custody in that joint legal custody is concerned with the right of both parents to be involved in making those decisions which significantly affect the life of the child, such as decisions about the child's education and health care, while joint physical custody is concerned with the arrangements concerning the immediate supervisory control of the child by each parent.

4. Any dispute between parents over the custody of a minor child must be decided on the basis of the best interests of the child. While the trial court's award of joint legal custody was proper, the award of alternating physical custody was not in the best interests of the children, since the parents were unable to mutually agree to such an arrangement. Physical custody of the children should have been awarded to plaintiff mother. The trial court shall determine the questions of the proper level of child support and the extent of visitation rights with defendant.

5. The questions of the division of the marital property and the award of alimony were matters within the discretion of the trial court. Since the Court of Appeals is not convinced that it would have reached a different result had it occupied the position of the trial court, the trial court's determination with respect to the property division and the award of alimony in gross is affirmed.

Affirmed in part, reversed in part and remanded.

BEASLEY, J., dissented. He would hold that where a parent in good faith could not agree to a joint custody award joint custody should not be awarded, since, under those circumstances, joint custody is not in the best interests of the children. He would reverse the order of joint custody but would

affirm the division of property and the award of alimony in gross.

## OPINION OF THE COURT

1. PARENT AND CHILD — DIVORCE — CHILD CUSTODY — JOINT CUSTODY — STATUTES.

    The Michigan Child Custody Act of 1970 neither prevents nor requires joint custody of children by their parents upon the parents' divorce (MCL 722.21 *et seq.*; MSA 25.312[1] *et seq.*).

2. PARENT AND CHILD — DIVORCE — CHILD CUSTODY — JOINT CUSTODY — AGREEMENT BY PARENTS.

    Joint custody over a child should be awarded where the divorcing parents agree that a joint custody arrangement is in the best interests of the child.

3. PARENT AND CHILD — DIVORCE — CHILD CUSTODY — JOINT CUSTODY — OBJECTION BY PARENT.

    The objection of one parent that joint custody is not in a child's best interests does not preclude an award of joint custody of a child to both parents upon the divorce of the parents.

4. PARENT AND CHILD — CHILD CUSTODY — JOINT LEGAL CUSTODY — JOINT PHYSICAL CUSTODY.

    Joint legal custody of a child is concerned with a jointly held right to make decisions which significantly affect the life of a child, such as decisions about the child's education and health care, while joint physical custody is concerned with the child living with the parent.

5. PARENT AND CHILD — CHILD CUSTODY — BEST INTERESTS OF THE CHILD — STATUTES.

    A dispute between parents over custody of a minor child is to be decided on the basis of the best interests of the child (MCL 722.25; MSA 25.312[5]).

6. PARENT AND CHILD — DIVORCE — CHILD CUSTODY — JOINT PHYSICAL CUSTODY — JOINT LEGAL CUSTODY — BEST INTERESTS OF THE CHILD.

    An award of joint alternating physical custody of children to their divorced parents is improper, even where the joint legal custody of the children is proper, where, because of the inability of the parents to mutually agree to such an arrangement, the physical exchange of the children is not in the best interests of the children.

7. Divorce — Division of Property — Alimony — Discretion.

The division of marital property and the award of alimony upon divorce are matters within the discretion of the trial court; the Court of Appeals will not reverse an award of property or alimony unless it is convinced that, had it occupied the position of the trial court, it would have reached a different result.

Dissent by Beasley, J.

8. Parent and Child — Divorce — Child Custody — Joint Custody — Statutes.

*The Michigan Child Custody Act act does not prevent divorcing or divorced parents from having joint custody of their child where the parents have a level of communication, understanding and agreement such that joint custody is in the child's best interests; there is nothing in the Child Custody Act requiring or preferring joint custody (MCL 722.21 et seq.; MSA 25.312[1] et seq.).*

9. Parent and Child — Divorce — Joint Custody — Best Interests of Child — Agreement by Parents.

*Joint custody by the parents of a child should be ordered where the divorced parents can agree that such an arrangement is in the best interests of the child, absent any evidence that such an arrangement is contrary to the best interests of the child; joint custody of a child should not be ordered where one of the divorced parents, in good faith, does not believe that joint custody will serve the best interests of the child.*

10. Parent and Child — Child Custody — Divorce — Alternating Custody.

*Alternating custody of a child by the divorced parents for equal periods of time is not generally favored by the Court of Appeals.*

11. Parent and Child — Child Custody — Preference of Child.

*The preference of a 12-year-old child who is performing well in school and is mature in social outlook relative to the question of which of her divorced parents should have custody of her should control in the absence of strong evidence that custody should not be granted to that parent.*

12. Parent and Child — Child Custody — Best Interests of Child.

*The desire of siblings to remain together, along with the custodial preference of those children, must be considered in determining in whose custody the best interests of the children will be served.*

13. PARENT AND CHILD — CHILD CUSTODY — ALTERNATING CUSTODY —
BEST INTERESTS OF THE CHILD.

*Any joint custody arrangement which shifts a child's custody
from one parent to the other on a weekly basis disturbs the
continuity of the child's life and is not in the best interests of
the child.*

*Dunnings & Canady, P.C.,* for plaintiff.

*Sinas, Dramis, Brake, Boughton, McIntyre &
Reisig, P.C.,* for defendant.

Before: DANHOF, C.J., and BEASLEY and CYNAR,
JJ.

CYNAR, J. Plaintiff, Elizabeth Wilcox, appeals
from the child custody provision as well as the
property settlement and alimony in gross award in
a judgment of divorce granted February 13, 1979.
The court ordered joint custody of the two children
to be held by the plaintiff and defendant, Kent
Wilcox, with the parties to exchange physical cus-
tody of both children weekly unless the parties
agreed otherwise.

The parties were married on or about October 5,
1968, in East Lansing, Michigan, and as a result of
this marriage, one child, Frank Sterling Wilcox,
was born on December 17, 1969. The child of the
plaintiff by her former marriage, Marni Darr
Holmes Wilcox, born February 8, 1966, was
adopted by the defendant.

The parties were separated for several months
prior to the filing of the complaint for divorce in
March, 1978. During the separation, the plaintiff
had custody of the minor children.

As found by the circuit court, one of the main
precipitating factors in the dissolution of the mar-

riage was the defendant's decision to find a new partner.

In an *ex parte* order entered March 28, 1978, custody was awarded to the plaintiff. This order was modified to "joint custody" on May 24, 1978. The nature of this "joint custody" was to have the two minor children stay one week with the plaintiff and then stay one week with the defendant.

At trial, testimony was first taken from Dr. Garry E. Stollak, a certified consulting psychologist and professor of psychology at Michigan State University. Dr. Stollak worked with the parties prior to trial in an effort to work out a suitable plan for custody of the children, both before and during the pendency of the divorce.

Dr. Stollak testified that beginning in September 1978 Marni became dissatisfied with the shared custody arrangement, preferring to reside only with the plaintiff. He also observed that Frank, the younger child, had a healthy relationship with both parties and that he did not want to be forced to choose with which parent he would live. In later testimony, Dr. Stollak stated that the plaintiff's negative attitude to an alternate custodial arrangement had affected the children's views of it. Finally, he testified that the children would not have difficulty meeting the standards of conduct for each separate home, that an alternate custody arrangement could be beneficial to the children and that the presence of a female friend in the defendant's home would not adversely affect the children's development.

Testimony was also heard at trial from Lynn Keller, a mental health therapist with the Capital Area Counseling Center. Ms. Keller, who previously interviewed and counseled Marni, expressed the opinion that Marni preferred to live with her

mother and that the maternal relationship was more important to Marni than that with her stepfather. She also said the children preferred to live together, but that no negative effects would arise if they lived apart. Ms. Keller testified as to counseling sessions held with the children and the defendant, concluding that the defendant loved his children very much and that he had no desire to force an undesired custody arrangement on Marni. In response to questions posed by the trial court, Ms. Keller stated that an alternate custodial arrangement involving periods of time longer than one week is generally preferable. However, Ms. Keller stated further that alternate custody, even with longer periods of time, would not work in this case.

Plaintiff testified that she was a better parent than defendant. She described the defendant as an "extreme authoritarian" to the point that Marni would urinate involuntarily if he yelled at her. The plaintiff also stated that when Frank returns to her custody under the week-to-week arrangement, he is greatly withdrawn and hangs onto her for three or four days. Finally, in the plaintiff's opinion, the divorce was brought about by an adulterous relationship of the defendant with another woman.

Defendant admitted at trial to Marni's dislike of alternate custody. He expressed the further opinion, however, that Marni's opinion was strongly affected by the negative suggestions of the plaintiff and that under the guidance of Lynn Keller his relationship with Marni had improved dramatically. Defendant also denied that an adulterous relationship caused the parties' marital breakup. Finally, he suggested that alternate custody would be in the best interests of the children and that

such an arrangement would permit the children to maintain close personal bonds with both parents.

The court in an oral opinion applied the factors set forth in § 3 of the Child Custody Act, MCL 722.23; MSA 25.312(3), discussing each factor enumerated therein. With respect to subsection (a), which is concerned with love, affection, and other emotional ties, and under subsection (b), which is concerned with capacity and disposition of competing parties to give the child love, etc., the court found the parties equal. With respect to subsection (c), which looks at the capacity and disposition of parties to provide the child with food, clothing, etc., the court found that there was no problem with either parent. As to factors listed in subsection (d), relating to length of time the child lived in a satisfactory environment, the court indicated that the parties had not been separated very long and that joint custody had been carried out to some extent. With respect to subsection (e), the court found that permanence as a family unit did not appear to be totally applicable in this case; while, with respect to subsection (f), the court noted that, while it may have been contended that Mr. Wilcox was less morally fit, the situation will resolve itself. As to the factor recited in subsection (g), there was no problem with the mental or physical health of either parent. With respect to subsection (h), there was no difficulty around the neighborhood, and the children were doing well in school. With respect to subsection (i), Marni preferred to be in the custody of her mother but Frank had not expressed a preference one way or another.

In the disposition of property, the trial court awarded to the plaintiff full title to the marital home and a jointly owned seven-unit apartment

building. The equity in the marital home was divided equally between the parties but was not made payable to the defendant until the plaintiff moved, sold or assigned her interest in the home, remarried, died, or the youngest child of the marriage reached 18 years of age. The plaintiff also received full title to a second apartment building owned by the parties which had an equity of $3,000. The trial court then added the equity of the third property to that of the seven-unit building, a total of $73,000 in equity. After deducting $15,000 from this total based upon the plaintiff's original investment in the seven-unit building, the trial court divided the remaining equity value into equal $29,000 shares. Out of the defendant's share $7,500 was ordered to be paid to the plaintiff as alimony in gross.

Approximately one half of the states have enacted legislation concerned with the issue of joint custody. Some 23 states have equalized parental rights in child custody through legislation.[1] Under California's 1980 custody statutes,[2] joint custody is the court's first and preferred alternative, and the court is required to enumerate its reasons if it refuses to award joint custody. Joint custody under the California code is defined as "an order awarding custody of the minor child or children to both parents and providing that physical custody shall be shared by the parents in such a way as to assure the child or children frequent and continuing contact with both parents; provided, however, that such order may award joint legal custody without awarding joint physical custody".

The Michigan Child Custody Act of 1970[3] nei-

---

[1] Foster & Freed, *Joint Custody: Legislative Reform,* 16 Trial 22 (June, 1980).

[2] See Cal Civ Code §§ 4600, 4600.5 (West).

[3] MCL 722.21 *et seq.;* MSA 25.312(1) *et seq.*

ther prevents nor requires joint custody. In *Schilleman v Schilleman,* 61 Mich App 446; 232 NW2d 737 (1975), *lv den* 395 Mich 769 (1975), the Court indicated that, while it did not generally favor orders which alternate the custody of the children between parents for equal periods of time, the trial court's decision in that case was affirmed because the Court could not say that the trial court committed a palpable abuse of discretion in awarding such alternate custody.

Viewed from the standpoint of the best interests of the child, joint custody, when workable following a divorce, affords access and continuity to a parent and active participation in the life of a child following a divorce. We are in accord with our colleague that, where divorcing parents can agree that joint custody is the arrangement that serves the best interests of the child, trial courts should give approval, except, perhaps, in the unusual case where a trial court finds evidence that such an arrangement is contrary to the best interests of the child. However, we are not in total agreement that, where a *parent* in good faith does not believe that joint custody will serve the best interests of the child, joint custody should not be awarded over such an objection. First, it is necessary to define the term joint, alternative, or shared custody, since the understanding of its meaning may differ. There is a difference between joint legal custody, which is concerned with making decisions which significantly affect the life of a child, and joint physical custody, which is concerned with the child living with the parent. There are multiple situations where legal custody awarded to a sole parent deprives the other parent of sharing in making decisions concerned with the child's education, dental, other health care, as well

as other decisions in the life of the child. Whether
the plaintiff agrees to joint custody or not, the
facts support an award of joint legal custody of the
children in this case.

Under MCL 722.25; MSA 25.312(5), a dispute
between parents over custody of a minor child is to
be decided on the basis of the "best interests of the
child". No doubt § 3(j),[4] which provides for consid-
eration by the trial court of "any other factor
considered by the court to be relevant to a particu-
lar child custody dispute", was added to encompass
significant and unique fact situations which other-
wise might be overlooked or not considered. Cer-
tainly, the "best interests of the child" cannot be
viewed in a vacuum but, rather, must be viewed
from the standpoint of how things actually are in
a specific case.

The granting of joint custody is not agreed to by
both parents in this case. We have a situation
where the plaintiff, embittered by a number of
events, several of which are mentioned here, is
opposed to the award of joint custody. It does not
matter whether there is acceptance or rejection of
the life style of the defendant, who took on an-
other mate. Defendant has his side of the story.
However, when viewed from the plaintiff's posi-
tion, the strong feelings she has are accurately
illustrated by her indication that she will give up
custody altogether rather than accept joint cus-
tody.

Further, plaintiff's viewpoint differs from the
defendant's in regard to the property division. The
plaintiff is not willing to accept the property divi-
sion, particularly as it concerns the Woodruff
Street apartment building, which has an equity of
$70,000. Plaintiff contends that: (1) the initial

---

[4] MCL 722.23(j); MSA 25.312(3)(j).

investment came from her side of the family; (2) during part of the marriage the defendant was a student; and, (3) defendant's yearly earnings were meager except for the last year or two of the marriage. This factor exacerbates the tension between the parties relative to the child custody issue.

Even under a more favorable setting, alternate physical custody, although workable, may have its problems. Here, the custody order provides the parties shall exchange physical custody of the minor children on Friday of each week or make whatever other arrangement is mutually agreeable to the parties. With what is mutually agreeable we have no difference on the facts before us. However, the transfer of physical custody from one parent to the other on alternate weeks can only be compared to the travel of a tennis ball back and forth from one side of the tennis court to the other. Such movement of the children is not in *their* best interests.

It is our finding that the trial court was correct in ordering joint legal custody in both parents. Nonetheless, we find that the trial court erred in awarding alternate or joint physical custody of the minor children in this case. The trial court's order to exchange physical custody of the minor children on Friday of each week is set aside and physical custody of both minor children awarded to Plaintiff, Elizabeth Wilcox, subject to reasonable visitation rights in defendant, Kent Wilcox.

The authority of the trial court to divide marital property between the parties to a divorce arises under MCL 552.19; MSA 25.99, and the court's authority to order alimony is statutorily provided in MCL 552.23; MSA 25.103.

It is well settled that a division of marital

property or an award of alimony is a matter within the discretion of a trial court. *Johnson v Johnson,* 346 Mich 418; 78 NW2d 216 (1956), *Pinney v Pinney,* 47 Mich App 290; 209 NW2d 467 (1973), *Van Ommen v Van Ommen,* 25 Mich App 652; 181 NW2d 634 (1970). In *Johnson v Johnson, supra,* 431, the Supreme Court held:

"The division of property in a divorce action is not governed by any rigid rules or mathematical formula. Each case depends on the particular facts involved. * * *

"The portion of property awarded to each party depends upon all the equitable factors involved, including the following: source of property, contribution towards its acquisition, the years of married life, the needs of the parties, their earning ability and also the cause for divorce."

Further, this Court will not reverse an award of property or alimony unless it is convinced that, had it occupied the trial court's position, it would have reached a different result. *Paul v Paul,* 362 Mich 43; 106 NW2d 384 (1960), *Simmons v Simmons,* 58 Mich App 480; 228 NW2d 432 (1975), *Feldman v Feldman,* 55 Mich App 147; 222 NW2d 2 (1974).

And although a property award need not meet any specific numerical standard, it "must be fair in light of the overall financial circumstances of the parties". *McDermott v McDermott,* 84 Mich App 39, 41; 269 NW2d 299 (1978).

While we view the trial court's decision to award alimony in gross to the plaintiff and its division of marital property as a very close question in this case, the trial court did not abuse its discretion. A review of the record discloses no reversible error.

We affirm the property settlement and alimony

in gross provisions, as well as the joint legal
custody in both parents. However, we reverse the
joint physical custody determination and award
physical custody of both minor children to plain-
tiff, Elizabeth Wilcox, subject to reasonable visita-
tion rights in the defendant, Kent Wilcox. There-
fore, this case is remanded to the trial court for a
determination of child support and reasonable
visitation rights. No costs are awarded.

DANHOF, C.J., concurred.

BEASLEY, J. *(dissenting)*. The following opinion
was originally circulated as a proposed majority
opinion. Review of the scholarly and carefully
drawn opinion of my brother, which becomes the
majority, does not persuade me to change my
opinion.

This is a joint custody case.

On February 13, 1979, a judgment of divorce
under the no-fault divorce statute[1] was entered
dissolving the parties' marriage.

In this case, the trial court's ruling regarding
custody and visitation, as set forth in the judg-
ment of divorce, provides:

"IT IS ORDERED AND ADJUDGED that the custody
of the two minor children of the parties herein, to-wit:
Marni Darr Holmes Wilcox, born February 8, 1966, and
Frank Stirling Wilcox, born December 17, 1969, shall be
jointly in Elizabeth Wilcox, plaintiff, and Kent Wilcox,
defendant. The parties shall exchange physical custody
of the minor children on Friday of each week, or make
whatever other arrangements which are mutually
agreeable to the parties. The parties shall communicate
with reference to any school, social or other events and
activities which affect the interests of the children.

[1] 1971 PA 75, effective January 1, 1972; MCL 552.6, 552.7, 552.19,
552.29; MSA 25.86, 25.87, 25.99, 25.107.

During the time custody is with the other parent, the non-custodial parent shall have liberal rights of visitation as it is the intent of this order that the children have a full and rich relationship with each parent."

Plaintiff mother appeals from this joint custody provision and also from the property settlement and gross alimony award.

I find nothing in the Michigan Child Custody Act of 1970[2] preventing joint custody in those cases where the parents, even though divorcing or divorced, have the level of communication, understanding and agreement so obviously necessary if joint custody is to be truly in the child's best interest. By the same token, neither do I find anything in the Child Custody Act requiring or preferring joint custody.

In cases where divorcing parents can agree that joint custody is the arrangement that serves the best interests of the child, trial courts should give approval, except, perhaps, in the unusual case where a trial court finds evidence that such an arrangement is contrary to the best interests of the child. But, where a parent in good faith does *not* believe that joint custody will serve the best interest of the child, joint custody should not be awarded over such an objection.

This divorce judgment gave effect to the trial judge's opinion which he rendered from the bench, providing, in part, as follows:

"The Court, as to custody—The Court, of course, as counsel is aware, has considered that particular aspect before in hearings on the matter, and counsel did not choose in their statements to the Court, did not choose to go into that matter in great detail.

"Of course, the Court is obligated to apply the factors

[2] MCL 722.21 *et seq.;* MSA 25.312(1) *et seq.*

set forth in the Child Custody Act, being MCLA 722.23. It appears to the Court that those factors, without enumerating them in any great detail here, we can all read them, that as to the factors that are set forth in that particular section of the statute, and I have it before me, love and affection, emotional ties appear to be equal between these parties; capacity of the parties to give the children love, affection and guidance appears equal between the parties; continuation of their education and raising the child in its religion or creed, does not appear to be any objection on the part of anyone to Marni being raised in her particular creed, if any, and therefore the parties do not seem to be diametrically opposed, or to any great extent opposed, to proper education and raising the child in its religion.

"The capacity and disposition to provide the children with food, clothing, medical care, there is no problem in the Court's mind on the part of either parent.

"The length of time the child has lived in a stable, satisfactory environment, the desireability [*sic*] of continuing and maintaining continuity, these parties have not been separated very long, and for a considerable period of time joint custody arrangements have been carried out to some extent. Permanence of the family unit, that does not appear to be totally applicable to the situation before the Court.

"Moral fitness of competing parties. I suppose there is some contention that Mr. Wilcox, having acquired another interest, is less morally fit, but I don't believe that has been harmful to the children, and of course the judgment of divorce being granted, possibly that particular situation will resolve itself.

"Mental and physical health does not appear to be any problem. The mental or physical health of either parent.

"The home, school, community record, these children do not appear to be in any difficulty around the neighborhood; the school, they are doing well in school.

"Any reasonable preference of the child.

"Now, Marni, the oldest child, expressed to the Court that she would prefer to be in the custody of her mother, and from time to time visit her father. Frank

has expressed no meaningful position one way or the other.

"Now, it seems to the Court that one of the problems with joint custody during this period of this attempt was Mrs. Wilcox's reluctance to see to it that it worked, which is natural, I suspect. She didn't approve of the Court's granting the order in that manner, and therefore is not going to be receptive to attempting to work it out.

"At the same time, however, that does not stand in her credit; can't give her credit for, at least in the Court's view, attempting to destroy the effect of this Court's order, or to negate its effect. So I can't give her credit for that. So I must mildly chastise her on the record.

"It seems to me in my discussions with the children that they would be more amenable to this arrangement if it were encouraged rather than discouraged. To some extent I believe that Mrs. Wilcox has to take the blame for that discouragement. So for whatever purpose it may serve, she is mildly admonished here by the Court.

"The Court is going to continue the joint custody arrangement, even though it appeared that Marni is not entirely receptive to doing it. The Court is aware of Mr. Wilcox's desire not to force that issue and allow Marni to continue to try to work out her own problems in her own way. The Court has had the opportunity to discuss the matter with her and has had an opportunity to observe Marni. It is impressed with her ability to give a reflective and thoughtful consideration to things. She is an intelligent 12-year-old individual. The Court, of course is reluctant to allow a minor to kind of direct what the Court should do. However, we have to be realistic. It appears that with encouragement from Mrs. Wilcox and Mr. Wilcox kind of continuing benign neglect, if you will, to the situation, I think it may work itself out.

"At any rate, the Court views that that at the present time is not harmful to either child. They understand the situation. I think they can work with it. At the same time, I think there has got to be some encouragement of that arrangement.

"Therefore, in that respect, the Court feels that this court-ordered support payment was too high on the prior occasion, and did not allow the proper encouragement. Therefor, the Court is going to set the support at $25.00 per week per child. Now, that is actually $50.00 per week per child, if you consider that the custodian of them has them only every other week, according to the terms of the custody order. So that I don't feel is an unfair amount.

"On the other hand, if the encouragement is that the child not visit, of course, the support arrangement won't be that much. Perhaps that would be an inducement or encouragement necessary in order to carry out some of the things that Dr. Stollak talked about, and others, respecting this request of Mr. Wilcox to remain a father and in constant contact with the children and have a more meaningful relationship which has been what the Court, and I am sure counsel, have seen over a period of time in divorces such as this and others. Mr. Wilcox has expressed the desire to continue to be a part of the lives of these children, and the Court is going to give him that opportunity, with, of course, the understanding that the Court's judgment may be changed at any time, if that particular situation is not working out.

"So joint custody may continue on the same arrangement as previously ordered by the Court. I think that order set forth visitation too, but I don't really think that is necessary where joint custody is provided. I don't recall exactly what the order provided, but, at any rate, an arrangement of that nature, or similar to that nature, in consideration of the fact that the judgment of divorce has been granted, shall enter."

At the outset, I note that orders which alternate custody of the children between parents for equal periods of time are not generally favored by this Court.[3] As indicated, I believe that where parents agree and desire it, joint custody is a viable arrangement often in the best interests of the chil-

---

[3] *Schilleman v Schilleman,* 61 Mich App 446; 232 NW2d 737 (1975).

dren.[4] However, such is not the case here, where the mother has consistently opposed joint custody as contrary to the best interests of the children.

I recognize that decisions as to custody are among the most difficult a judge must make. On appeal, this Court reviews custody orders *de novo* in the same way as other chancery matters.[5] But, in so doing, this Court attaches great weight to the findings of fact of the trial judge, giving full consideration to his superior opportunity to form judgments regarding credibility of witnesses in seeing and hearing them.[6] I do so here. However, in so doing, I note that the trial court's only criticism of plaintiff mother was in her reluctance to accept his joint custody plan.[7] Applying the age-old test of Solomon, I take note that her reluctance seemed to arise from a concern and from a conviction as to where the best interest of the children lay.[8] She testified that she believes so strongly that joint custody was contrary to the children's best interest that she would give up their custody rather than acquiesce in a permanent joint custody arrangement.

Contrary to the trial judge, I decline to penalize her for her strong desire to have custody of the children, a wish which, incidentally, was shared by a daughter who was then almost 13 and is now 14 and a son who is now 11.

In so finding, I have carefully reviewed the testimony. On direct examination, defendant hus-

[4] *Id.*

[5] *Bahr v Bahr*, 60 Mich App 354; 230 NW2d 430 (1975), *lv den* 394 Mich 794 (1975), *Outcalt v Outcalt*, 40 Mich App 392; 198 NW2d 779 (1972).

[6] GCR 1963, 517.1.

[7] It should be noted that defendant husband's expert witness disavowed the plan as his own, characterizing it as the trial court's plan.

[8] See, Neilson, *Joint Custody: An Alternative for Divorced Parents*, 26 UCLA L Rev 1084, 1106, fn 105 (1979).

band admitted that the reason for the divorce was his involvement with another woman, as follows:

> "Q Your wife has from the witness stand indicated that your marital separation was because you advised her of your involvement with another woman, and upon cross examination by Mr. Taylor it was indicated that it was a year ago today. Is that the case?
> "A Yes, it is."

The next question and answer were as follows:

> "Q What did you advise Mrs. Wilcox at that time?
> "A I advised my wife that I did not feel we had made a success of our attempts to put together a relationship; that I was not happy; that I was not happy with the relationship as the relationship existed; that I did not see anything that was available to us to help us live together. Something to that effect."

Proof of fault is no longer required to entitle one to a divorce; in fact, fault is irrelevant to whether or not to adjudicate a divorce. But fault was relevant to custody in this case, both as a factor to be considered under subsection 3(f) relating to moral fitness and as an explanation of why plaintiff mother preferred to sever her relationship with defendant father.

Where, as here, the cause of the divorce is the father's expressed preference for another woman, I cannot share in the trial judge's conclusion to give the mother bad marks, as did he, for her refusal to cooperate in a plan that requires her to maintain a constant, close, continuing relationship with her ex-husband concerning the care, custody, upbringing and control of their children. In this situation, the children's best interests are served by placing their custody in one parent or the other after due consideration of the statutory factors.

I further find that, in determining the best interests of the children in this case, the trial court gave insufficient weight to three other factors: (1) the reasonable preference of the children,[9] (2) the desirability of maintaining continuity,[10] and (3) any other factor considered by the court to be relevant to a particular child custody dispute.[11]

In this case, Marni, the defendant's stepdaughter, who at the time of trial was only a month or two short of 13, expressed a strong preference to live with her mother.[12] The trial court specifically found that Marni was an intelligent child and had the ability to give reflective and thoughtful consideration to the matter. Under these circumstances, I feel that Marni's preference to live with her mother should not simply be dismissed on the conjecture that she may have been influenced by her mother's refusal to acquiesce in and give encouragement to the trial court's joint custody plan, but rather, I hold that her expressed preference should receive substantial weight.

While I do not believe the preference of a child is the only factor in custody decision, where other factors are at least equal, I believe that where a child is over 12, performing satisfactorily in school and reasonably mature in social outlook the child's preference as to custody should control unless there is other strong evidence to the contrary.

I note that the court found that Frank, age nine at the time of trial, made no meaningful expression as to whom he preferred to live with. How-

[9] MCL 722.23(i); MSA 25.312(3)(i).

[10] MCL 722.23(d); MSA 25.312(3)(d).

[11] MCL 722.23(j); MSA 25.312(3)(j).

[12] Plaintiff and defendant were married October 5, 1968. Marni is the child of plaintiff mother by a previous marriage, who has been adopted by defendant with the consent of plaintiff.

ever, I also note that the expert employed by defendant husband testified that Frank had stated that he preferred to live with his mother. Thus, while I give less weight to Frank's custodial preference than Marni's because he is younger, I would hold that Frank's preference was entitled to some consideration. I also believe that the children's obvious preference to stay together points to the conclusion that their best interests will be served by keeping them together in the custody of their mother.

Aside from the reasonable preference of the children, I also find that the trial court gave insufficient weight to the importance of maintaining continuity in the children's lives. Any joint custody arrangement will disturb continuity in the child's life to a certain degree because significant decisions in up-bringing will depend upon where the child is living and which joint custodian is in charge. I find that this joint custody arrangement, which shifts custody from one parent to another on a weekly basis, disturbs continuity in the children's lives and is detrimental to and not in the best interests of the children.[13]

By my opinion here, I do not intend to discourage joint custody of children between parents who both want it. However, I believe that joint custody will only serve the best interests of a child where both parents genuinely believe that the objective of joint custody is desirable. In the present case, the trial judge appeared to recognize that fact in

[13] 24 Am Jur 2d, Divorce and Separation, § 799, p 909, provides as follows:

"Where some division of custody is warranted, a frequent shifting of the child from home to home is unnecessarily harmful and should not be permitted. Thus, the courts should avoid committing a child to one home during the week and to another home for each weekend, although cases may be found wherein the appellate courts have affirmed an order for such shifting of custody." (Footnotes omitted.)

his reference to the mother's disapproval of his joint custody plan.

In this case, the balance between the parents on the scale of statutory factors was not and is not equally balanced. The definite preference of these children, given their respective ages, for placing their custody in their mother, together with the other evidence in her favor, greatly preponderates over any possible advantages of this joint custody arrangement and mandates reversal of the trial court's order.

In approving of joint custody in cases where the parents want it, I do not intend to establish joint custody as a *third* viable alternative to custody in the mother or custody in the father. I do not consider that correct analysis here requires a choice between custody in the mother and joint custody. Rather, I would rule out joint custody where, as here, the mother, for sincere reasons, does not choose to voluntarily enter into a joint custody arrangement.

Also, there is another factor here which makes an award of joint custody unnecessary. The parties live close together, as defendant has rented an apartment a few blocks from the plaintiff's home. This close proximity of the parties makes it easy for the children, whose interests are paramount, to have frequent contact with the noncustodial parent without the necessity for constant changes in custody to achieve this continuing relationship.

Accordingly, I find that the trial court erred in granting joint custody in this case, and I would set aside the trial court's custody order and award custody of both minor children to plaintiff, Elizabeth Wilcox, subject to reasonable visitation in defendant, Kent Wilcox.

Plaintiff next argues that the trial court erred in

computing the amount of property settlement and alimony in gross. I disagree.

It is well settled that a division of marital property or award of alimony is a matter within the discretion of the trial court.[14] This court will not reverse unless it is convinced that, had it been in the trial court's position, it would have reached a different result.[15]

I cannot say that I would have reached a result different from that of the trial court. Accordingly, I would affirm the trial court's order of alimony and property settlement.

Consequently, I would affirm in part and reverse in part, remanding to the trial court for a determination of child support and visitation rights.

---

[14] *Johnson v Johnson,* 346 Mich 418; 78 NW2d 216 (1956), *Pinney v Pinney,* 47 Mich App 290; 209 NW2d 467 (1973), *Van Ommen v Van Ommen,* 25 Mich App 652; 181 NW2d 634 (1970).

[15] *Paul v Paul,* 362 Mich 43; 106 NW2d 384 (1960), *Simmons v Simmons,* 58 Mich App 480; 228 NW2d 432 (1975), *Feldman v Feldman,* 55 Mich App 147; 222 NW2d 2 (1974).