## WILCOX v WILCOX (ON REMAND)

Docket Nos. 56971, 56972. Submitted April 3, 1981, at Lansing.—
Decided August 5, 1981.

Plaintiff, Elizabeth Wilcox, sought a divorce from defendant, Kent
Wilcox. The Ingham Circuit Court, Thomas L. Brown, J.,
granted the divorce. As part of the divorce judgment, custody of
their two children, 9 and 12 years of age, was ordered to be
held jointly by plaintiff and defendant with physical custody of
the children to be with each parent on alternate weeks. As to
the division of the marital property, the court ordered that title
to the marital home be awarded to plaintiff, with the equity in
that home to be divided equally upon its sale or assignment,
upon plaintiff's death or remarriage or upon the younger child
reaching 18 years of age. Of the $73,000 in equity in two other
properties, defendant received $29,000 which represented one
half of the equity in these properties after that equity is
reduced by the $15,000 investment made by plaintiff in one of
the properties prior to the marriage. Out of his share, defen-
dant was ordered to pay $7,500 as alimony in gross. Plaintiff
appealed and the Court of Appeals affirmed the property settle-
ment, the alimony in gross and joint legal custody but reversed
the joint physical custody determination and awarded physical
custody to plaintiff, 100 Mich App 75 (1980). Defendant applied
for leave to appeal and the Supreme Court, in lieu of leave to
appeal, remanded to the Court of Appeals to reconsider in light
of the new legislation concerning joint custody, 411 Mich 856
(1981). *Held:*

1. The questions of the division of the marital property and
the award of alimony are matters within the discretion of the
trial court. Since the Court of Appeals was not convinced that

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 868.
  24 Am Jur 2d, Divorce and Separation § 601.
[2] 24 am Jur 2d, Divorce and Separation §§ 626, 630, 631.
[3, 4] 24 Am Jur 2d, Divorce and Separation § 799.
  "Split," "divided," or "alternate" custody of children. 92 ALR2d
  695.

it would have reached a different result had it occupied the position of the trial court, the trial court's determination with respect to the property division and the award of alimony in gross was affirmed.

2. The new legislation concerning joint custody requires the court to consider it if requested and to state its reasons for granting or denying it.

Affirmed in part and remanded with instructions.

Beasley, J., concurred. He assumed that the Supreme Court intended to affirm, except with respect to custody. He noted that the legislation concerning joint custody was not intended to apply retroactively and concurred in the remand to the circuit court.

OPINION OF THE COURT

1. Divorce — Division of Property — Alimony.

The division of marital property and the award of alimony upon divorce are matters within the discretion of the trial court; the Court of Appeals will not reverse an award of property or alimony unless it is convinced that, had it occupied the position of the trial court, it would have reached a different result.

2. Divorce — Division of Property.

There is no set mathematical formula to a division of property in a divorce case and the amounts awarded need not meet any numerical standard, but they must be fair in light of the overall financial circumstances of the parties.

3. Parent and Child — Joint Custody — Custody — Statutes.

The joint custody provision of the Child Custody Act requires the court to consider joint custody at the request of either parent and to state reasons for granting or denying the request (MCL 722.26a; MSA 25.312[6a]).

CONCURRENCE BY BEASLEY, J.

4. Parent and Child — Joint Custody — Custody — Statutes.

*The joint custody provision of the Child Custody Act was not intended to apply retroactively (MCL 722.26a; MSA 25.312[6a]).*

*Dunnings & Canady, P.C.,* for plaintiff.

*Sinas, Dramis, Brake, Boughton, McIntyre & Reisig, P.C.,* for defendant.

ON REMAND

Before: DANHOF, C.J., and BEASLEY and CYNAR, JJ.

CYNAR, J. Plaintiff, Elizabeth Wilcox, appealed from the child custody provision as well as the property settlement and alimony in gross award in a judgment of divorce granted by the Ingham County Circuit Court. The trial court ordered joint custody of the two children to be held in the plaintiff and defendant with the parties to exchange physical custody of both children weekly unless the parties agreed otherwise.

On appeal, the Court of Appeals on September 15, 1980, affirmed the property settlement and alimony in gross provisions, as well as the joint legal custody in both parents. However, we reversed the joint physical custody determination and awarded physical custody of both minor children to plaintiff, Elizabeth Wilcox, subject to reasonable visitation rights in the defendant, Kent Wilcox. Further we remanded this case to the trial court for a determination of child support and reasonable visitation rights. 100 Mich App 75; 298 NW2d 667 (1980).

On April 1, 1981, on order of the Michigan Supreme Court, the motion *in propria persona* by defendant for immediate consideration was granted and applications for leave to appeal were considered and, pursuant to GCR 1963, 853.2(4), in lieu of leave to appeal the Supreme Court (docket nos. 66039 & 66042) vacated the Court of Appeals judgment and specifically remanded the case to the Court of Appeals for reconsideration in light of the new legislation concerning joint custody, 1980 PA 434. The child custody-joint custody Public Act

No. 434 took effect January 14, 1981. 411 Mich 856 (1981).

The parties to this divorce action were originally married on October 5, 1968. The plaintiff's previous marriage terminated on December 11, 1965, as a result of her husband's accidental death. From her first husband's death the plaintiff received a $15,000 life insurance settlement, which she invested in the construction of a seven-unit apartment building on Woodruff Street in Lansing, Michigan, about two years before this marriage. In addition, the plaintiff received a $27,000 workers' compensation settlement, of which $9,000 was given directly to her and the remaining $18,000 placed in the probate court for the benefit of the plaintiff's daughter, Marni, a child of the first marriage. The parties herein purchased a house, the present marital home, which required a down payment of $8,000. The money to meet the down payment came one half each from the workers' compensation settlement of the plaintiff and her daughter. The remaining $5,000 from the plaintiff's settlement was used for the purchase of furniture and other household items for this home. The plaintiff also drew $113 per month in social security benefits for her first child, which figure was raised to $130 per month in 1976 and thereafter to $183 per month. The parties also acquired a rental building unit on Kate Street in Holt, Michigan. This property was acquired without a cash deposit by either party and was transferred to the plaintiff in lieu of real estate commissions owed to her by a previous employer.

The parties stipulated to the value and remaining mortgages on each of the three properties involved herein. The Woodruff Street apartment building was given a present value of $120,000

with a $50,000 mortgage on it, thus leaving an equity in the property of $70,000. The marital home on Hayford Street, in Lansing, Michigan, was given a value of $40,000 with a $20,000 mortgage, leaving an equity of $20,000 at that time. Finally, the Kate Street rental unit was given a value of $38,000 with a $35,000 mortgage, resulting in a $3,000 equity.

The income of these parties varied over the years. In addition to the workers' compensation and social security benefits outlined above, the plaintiff conducted a day-care facility in the marital home, which earned between $1,000 and $1,500 annually. She also received amounts varying between $3,100 and $7,600 annually from her real estate work. The defendant testified that during the period of the marriage his income contribution was $4,898 of an adjusted gross total of $6,173 in 1969. In subsequent years his contributions were $6,245 of an adjusted gross total of $8,081 in 1970, $79.04 plus nontaxable GI Bill benefits of an adjusted gross total of $3,928 in 1971, $3,276 of an adjusted gross total of $4,567 in 1972, a gross income of $10,200 in 1973, $4,614 of an adjusted gross total of $12,270 in 1974, a gross income of $10,000 in 1975, a gross income of $16,281 out of an adjusted gross total of $17,757 in 1976, and in 1977 a gross income of $21,495 of an adjusted gross income of $24,788.

At the time of this action, the plaintiff was employed in the Ingham County Clerk's office at an annual gross salary of $8,655. She also received $50 per month as rental income. The defendant was, at that time, employed with the Michigan Consumer Council at an annual salary of $27,000.

In its disposition of property, the trial court awarded to the plaintiff full title to the marital

home and the Woodruff Street apartment building. The parties were each given one half of the equity in the marital home ($20,000). However, the plaintiff was not required to immediately sell the home and tender to the defendant his portion of the equity. His equity was secured by a mortgage on the house and was not made payable until the plaintiff moved, sold or assigned her interest in the home, remarried, died or when the youngest child of the marriage reached 18 years of age.

The trial court also gave full title of the Kate Street property to the plaintiff. The court totaled the equities of this and the Woodruff Street property as being $73,000. The court then deducted $15,000 for the benefit of the plaintiff, based on her original investment in the property just prior to the parties' marriage. The remaining equity in the property, $58,000, was awarded in equal shares to each party herein. From the defendant's share of $29,000, the lower court subtracted $7,500 as alimony in gross to be paid to the plaintiff, leaving the defendant with a total of $21,500 in equity from the Woodruff and Kate Street properties. The defendant's equity was made payable under the same limitations as that for the marital home.

As a result of the division of property above, the plaintiff received title to all three of the properties involved in this appeal. Out of a total $93,000 equity in the three properties, the plaintiff received a total share of $61,500 and the defendant $31,500. In addition, the defendant's ultimate share is fixed and can only increase based upon a nine percent interest rate. If the properties increase or decrease in value, the plaintiff's share of equity will take a corresponding rise or fall.

The authority of the trial court to divide marital property between the parties to a divorce arises

under MCL 552.19; MSA 25.99, and the court's authority to order alimony is statutorily provided in MCL 552.23; MSA 25.103.

It is well settled that a division of marital property or an award of alimony is a matter within the discretion of a trial court. *Johnson v Johnson,* 346 Mich 418; 78 NW2d 216 (1956), *Pinney v Pinney,* 47 Mich App 290; 209 NW2d 467 (1973), *Van Ommen v Van Ommen,* 25 Mich App 652; 181 NW2d 634 (1970). In *Johnson, supra,* 431, the Supreme Court held:

"The division of property in a divorce action is not governed by any rigid rules or mathematical formula. Each case depends on the particular facts involved.

\*   \*   \*

"The portion of property awarded to each party depends upon all the equitable factors involved, including the following: source of property, contribution towards its acquisition, the years of married life, the needs of the parties, their earning ability and also the cause for divorce."

Further, this Court will not reverse an award of property or alimony unless it is convinced that, had it occupied the trial court's position, it would have reached a different result. *Paul v Paul,* 362 Mich 43; 106 NW2d 384 (1960), *Simmons v Simmons,* 58 Mich App 480; 228 NW2d 432 (1975), *Feldman v Feldman,* 55 Mich App 147; 222 NW2d 2 (1974).

Although a property award need not meet any specific numerical standard, it "must be fair, in light of the overall financial circumstances of the parties". *McDermott v McDermott,* 84 Mich App 39, 41; 269 NW2d 299 (1978).

We do not find any reversible error in the trial court's decision to award alimony in gross to the

plaintiff and in the division of the marital property.

Under MCL 722.26a; MSA 25.312(6a), at the request of either parent, the court shall consider joint custody, and shall state the reasons for granting or denying the request. Should the court otherwise consider joint custody, the court shall determine whether joint custody is in the best interests of the child by considering the "best interests of the child" factors as well as whether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child. The above-stated as well as other applicable provisions under Public Act No. 434 necessitates a factfinding by the trial court.

We vacate that portion of the circuit court divorce judgment concerned with custody and remand the case to the circuit court for reconsideration of its custody provision in light of the child custody-joint custody Public Act No. 434 with instructions for taking additional proof if deemed needed by the trial court.

The trial court is to make its finding of fact and decision concerning custody within 60 days from the date of this opinion.

The judgment of divorce is affirmed in part and vacated in part in accordance with this opinion.

We retain no jurisdiction.

DANHOF, C.J., concurred.

BEASLEY, J. *(concurring).* As the dissenter respecting custody in this case,[1] I am at a loss as to my role in the light of the Supreme Court's brief order vacating the majority's decision and remanding for "reconsideration" in view of the joint cus-

---

[1] *Wilcox v Wilcox,* 100 Mich App 75; 298 NW2d 667 (1980).

tody amendment to the statute. I am assuming that the Supreme Court intended to affirm, except with respect to custody.

Public Act No. 434 of 1980, referred to by the Supreme Court, amends § 3 of and adds a new § 6a to the Child Custody Act of 1970[2] and was approved January 14, 1981, with immediate effect.

Section 3[3] was amended to make eagerness for joint custody a plus factor in disputed custody matters. Section 6a spells out a kind of legislative preference for joint custody. Whether joint custody should be imposed in the face of violent custody disputes must await judicial review on a case-by-case basis.

I do not believe 1980 PA 434 was intended to be applied retroactively.[4] However, it was in effect after January 14, 1981. Therefore, I join the majority in remanding this case to the trial court for appropriate further action.

[2] MCL 722.21 et seq.; MSA 25.312(1) et seq.

[3] MCL 722.23(j); MSA 25.312(3)(j).

[4] People v Rice, 101 Mich App 1; 300 NW2d 428 (1980).