CROMBEZ v CROMBEZ

Docket No. 54770. Submitted November 18, 1981, at Detroit.—Decided
    April 6, 1982.

    A judgment of divorce was entered in Oakland Circuit Court,
    George H. La Plata, J., on the complaint brought by Janice
    Crombez against Richard Crombez. Plaintiff appeals. Defendant
    cross appeals. *Held:*

    1. The trial court erred in holding that the defendant's
    interest in his company's pension plan was not vested and
    therefore was not part of the marital estate subject to division.
    Since the parties stipulated to the present value of defendant's
    interest in the pension plan, it cannot be said that the defen-
    dant's interest in the pension plan was a contingency or mere
    expectancy with no actual present value.

    2. Subject to the addition to plaintiff's share of the marital
    estate of one-half of the value of the defendant's prospective
    pension, the division of property made by the trial court,
    including the cancellation of certain arrearages, was not in
    error and is affirmed.

    3. The award of attorney fees ordered by the trial court to be
    paid by defendant to plaintiff is increased by $2,000.

    4. The trial court did not abuse its discretion in the award of
    alimony to be paid to plaintiff by defendant.

    Reversed in part, affirmed in part.

1. DIVORCE — DIVISION OF PROPERTY — APPEAL.

    Orders of division of property in divorce cases are reviewed by
    the Court of Appeals *de novo* on the record; the Court of
    Appeals may amend the division of property if it is convinced
    that it would have reached a different conclusion.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 938.
    24 Am Jur 2d, Divorce and Separation §§ 925, 928.
[2] 24 Am Jur 2d, Divorce and Separation § 524.
[3] 24 Am Jur 2d, Divorce and Separation § 632.
[4] 24 Am Jur 2d, Divorce and Separation §§ 571, 580, 591, 595.
    Amount of attorneys' fees in matters involving domestic relations.
    59 ALR3d 152.

2. DIVORCE — DIVISION OF PROPERTY — ALIMONY.

A court, in determining alimony and the division of the marital estate in a divorce action, shall examine the following factors: (1) the duration of the marriage, (2) the contributions of the parties to the joint estate, (3) the age of the parties to the marriage, (4) the health of the parties, (5) the station in life attained by the parties, (6) the necessities of the parties and the circumstances of the case, and (7) the earning ability of the parties.

3. DIVORCE — MARITAL PROPERTY — DIVISION OF PROPERTY — PENSIONS.

It is error for a trial court in determining the division of marital property in a divorce to hold that a pension fund interest is not vested and therefore not part of the marital estate subject to division where the parties stipulated to the present cash value of the interest in the pension fund, such stipulation being an acknowledgment by the parties that the pension interest was not a contingency or mere expectancy.

4. DIVORCE — ATTORNEY FEES — APPEAL.

An award of attorney fees in a divorce action is made when necessary to enable a party to carry on or defend the litigation; additional fees may be awarded on appeal.

*William A. Gentz,* for plaintiff.

*Bromley & Roy, P.C.* (by *David R. Dawson),* for defendant.

Before: CYNAR, P.J., and V. J. BRENNAN and H. E. DEMING,* JJ.

CYNAR, P.J. Plaintiff appeals as of right from a judgment of divorce filed August 18, 1980, and from an amendment to that judgment filed on November 17, 1980. She seeks relief from the judgment with regard to the pension plan, medical and repair bills and from cancellation of arrearages in child support payments.

Defendant has cross appealed from the judgment of divorce and the order modifying the property

---

* Circuit judge, sitting on the Court of Appeals by assignment.

settlement. Defendant seeks relief with regard to one item of property (the rototiller) and from an award of alimony to be paid by defendant to plaintiff in the amount of $30 per week for five years.

Plaintiff, Janice Crombez, age 38 at the time of trial, filed her complaint for divorce on March 21, 1979. Defendant was 40 years of age. This 18-year marriage was the first for both parties.

Three children were born to the parties: James, born February 13, 1963; John, born November 8, 1965; and Kathleen, born October 6, 1973.

Both plaintiff and defendant had high school educations. Plaintiff, at the time of trial, was attending Oakland Community College on a part-time basis to gain a degree in accounting.

Plaintiff was employed as a secretary at the time of their marriage, and quit her employment because of the pregnancy with the first child, remaining unemployed until September 1978, when she started to work at a factory job, at the urging of defendant. From March 1979 until September 1979 she was employed part time as a receptionist, earning about $47 net per week. In September 1979, she began to work full time as a receptionist. At the time of the trial, she was working full time, making $200 gross and $151.86 net pay per week. Plaintiff receives no medical, hospital, retirement, pension, or profit-sharing coverage at her employment.

Defendant, at time of trial, had been employed 14-1/2 years by General Motors as a senior checker. His 1978 yearly gross income was $40,324.06. In 1979, he earned $38,309 in wages and received $2,313 from a cash refund of his 1976 stock purchase contributions.

At the time of trial, defendant had netted

$966.16 for a two-week period ending June 15, 1980, and $955.13 for the period ending June 30, 1980.

Defendant refused all overtime which had been available to him from March 1980 to the time of trial in August 1980, giving the reason that he was unable to handle it emotionally. Defendant had worked a substantial amount of overtime during the period prior to March 1980, earning an estimated $520 per week net in 1979.

At the time of trial, plaintiff had $212 in a savings account; defendant had $67 in a savings account and $6 in a checking account.

The major asset of the marriage was the jointly owned home built by the parties in 1971 for approximately $53,500, including the price of the lot. The house was later improved with, among other improvements, a swimming pool and barn. The house had a mortgage balance of $23,500. By stipulation, the parties introduced into evidence two real estate appraisals, which estimated the value of the house at $100,000 and between $110,000 and $120,000.

The parties owned two automobiles. One was a 1978 Chevrolet, leased by the defendant from General Motors and later titled in the name of the husband but subject to a lien of approximately $5,000. The other was a 1979 Chevrolet van, titled in the name of the defendant and subject to a lien of approximately $4,000 at the time of trial.

Other assets jointly owned by the parties included 152 shares of General Motors stock, which were received through defendant's participation in a stock purchase program with his employer. The parties also owned two motorcycles belonging to the two male children (the children had used their own money to pay one-half of the purchase price

of the cycles), miscellaneous furniture and lawn and household furnishings, as well as a rototiller and other garden equipment.

Evidence was presented at trial and at later hearings as to the nature of a pension plan and stock purchase plan contributed to by the defendant through his employer. Defendant also contributed to an Employee Stock Ownership Plan, which had a market value of $1,224.95 as of December 31, 1979.

Defendant lived in the marital home with the rest of the family from the filing of the divorce until October 15, 1979. When he moved out, he took with him various items of furniture, the value of which was disputed.

Plaintiff testified that the breakdown of the marriage resulted from defendant's involvement with a female neighbor. The affair was admitted by defendant's counsel at trial. Defendant attributed the breakup to other causes.

The parties were referred to the friend of the court for an evidentiary hearing in September 1979. Defendant was asked to remove himself from the marital home and was ordered, following the friend of the court's recommendation, to pay $172 per week in child support and $88 per week towards the utility and mortgage payments on the marital home. These payments were made retroactive to May 9, 1979. Defendant was further ordered to pay for reasonable and necessary repairs of an emergency nature to the homestead, to continue to make available to the plaintiff the use of the 1978 Chevrolet, to continue to make the installment payments on that automobile, and he was required to pay any arrearage under the terms of the temporary order. The arrearage pursuant to the order of the court was contended to

be $5,758. The court also granted plaintiff and the children exclusive occupancy of the house during the pendency of the case.

Plaintiff was able to keep the mortgage and utilities payments current until about May 1980, when, because of the defendant's default in payment of the temporary support and mortgage payments, she had insufficient funds to make the payments and fell into arrears. At the time of trial, she owed the June and July payments and the house was under threat of foreclosure.

Testimony was presented at trial as to dental, optical, and pharmaceutical bills paid by plaintiff on behalf of the children. The temporary support order required defendant to pay for these items. In addition, bills for emergency furnace and electrical repairs were presented. The medical and repair bills totaled $481.

The trial took place on August 11 and 12, 1980. The court's opinion was filed on August 18, 1980. The trial court, after taking into consideration the testimony of the parties and the exhibits admitted, and after finding fault on the part of the defendant, made the following property disposition. Plaintiff was given exclusive use and occupancy of the home for a period of two years from the date of the judgment, after which time the home was to be sold and the net proceeds divided 55% to plaintiff and 45% to defendant. Each party was to retain the household furniture presently in each party's possession. Both vehicles were awarded to the defendant and each party was awarded one motorcycle. The 152 shares of General Motors stock (total value $7,542) and the dividends received (total value $852) were divided equally. The court indicated that it had considered that the defendant received the sum of $2,042.55 in Febru-

ary 1980, which represented the actual value of stock purchased through General Motors' stock purchase program in 1976.

The trial court tentatively awarded defendant all his pension and stock program assets, although the parties were permitted to reserve the right to submit further proof of cash value of the pension plan at a later date. Pursuant to a stipulation of the parties the court entered an order on October 8, 1980, stating the cash value of the pension plan was $9,800.

In addition, the trial court ordered defendant's arrearage in child support payments of $5,758 canceled, and declined to order reimbursement for the $481 plaintiff expended on medical bills and emergency repairs.

Thereafter on October 8, 1980, plaintiff filed a motion requesting the trial judge to amend the judgment of divorce and grant plaintiff a sum approximating one-half of the value of the stock purchase rights and the pension rights of the defendant.

On November 17, 1980, the trial court granted plaintiff an amendment to the judgment and gave her a credit of $6,060.50, representing one-half of the value at the time of trial of defendant's stock purchase plan, denied her request for one-half of the $2,042.55 that the defendant had withdrawn from the plan, and denied her any credit or portion in the pension plan.

Plaintiff seeks a *de novo* review of the property settlement portion of the judgment of divorce. The standard of appeal in divorce cases is *de novo* on the record and the Court of Appeals may amend that portion of the property settlement of a judgment of divorce if convinced that it would have reached a different conclusion. *Paul v Paul,* 362

Mich 43, 47; 106 NW2d 384 (1960), *Evans v Evans,* 98 Mich App 328, 329; 296 NW2d 248 (1980), *Cooper v Cooper,* 93 Mich App 220; 285 NW2d 819 (1979), *Feldman v Feldman,* 55 Mich App 147, 153; 222 NW2d 2 (1974).

MCL 552.23(1); MSA 25.103(1) states:

"Upon every divorce from the bond of matrimony and also upon every divorce from bed and board if the estate and effects awarded to either party shall be insufficient for the suitable support and maintenance of either party and such children of the marriage as shall be committed to the care and custody of either party, the court may further award to either party such part of the real and personal estate of either party and such alimony out of the estate real and personal, to be paid to either party in gross or otherwise as it shall deem just and reasonable, *having regard to the ability of either party and the character and situation of the parties, and all the other circumstances of the case.*" (Emphasis added.)

Any determination as to alimony and property division necessitates an examination of the following factors:

"(1) duration of the marriage, (2) contributions of the parties to the joint estate [sources of property], (3) age, (4) health, (5) station in life, (6) necessities and circumstances and (7) earning ability [of the parties]." *Charlton v Charlton,* 397 Mich 84, 95, fn 5; 243 NW2d 261 (1976).

See *Ross v Ross,* 24 Mich App 19; 179 NW2d 703 (1970), *Hoffman v Hoffman,* 9 Mich App 715; 158 NW2d 78 (1968).

The trial court concluded that defendant's pension plan was not vested and was therefore not a divisible marital asset. It is our opinion that the court was in error.

In *Miller v Miller,* 83 Mich App 672, 675; 269 NW2d 264 (1978), the Court stated that an employee's interest in a pension fund may not be distributed pursuant to a divorce judgment if that interest is "contingent or a mere expectancy". Only that part of the employee's interest which has a "reasonably ascertainable present value" may be distributed.

In *Tigner v Tigner,* 90 Mich App 787, 790; 282 NW2d 481 (1979), this Court stated that the pension involved in that case had vested: "In fact, the parties stipulated below that the pension had a present cash value of $5,400, the value assigned to it by the trial judge."

The facts in the instant case involve just such a stipulation. Here, the parties stipulated to a present cash value of $9,800, as determined by their actuaries. By doing so, the parties were placing on the record a determination that the pension fund was not a contingency or a mere expectancy; it actually had a present value.

We are convinced that this Court would have reached a different result in part. We are convinced that the trial court was in error in not considering present cash value of defendant's interest in the pension plan which amounted to $9,800 as a divisible marital asset. In light of the totality of the review herein, it is our determination the plaintiff is entitled to receive one-half of the pension plan cash value of $9,800, which amount shall be deducted from the defendant's share of the proceeds of sale of the marital premises which will take place pursuant to the terms of the judgment. Having so determined, we are not convinced the trial court was in error in denying plaintiff's request to a credit of one-half of $2,042.55 of monies received by defendant under the 1976 stock purchase plan. Nor are we con-

vinced that the court was in error in canceling the arrearage. We note that, while plaintiff contends the trial court abused its discretion in canceling the entire $5,700 of arrearage, the plaintiff submits a more equitable arrearage would be $2,500.

An award of attorney fees in a divorce action is made when "necessary to enable a party to carry on or defend the litigation". *Radway v Radway,* 81 Mich App 328, 333; 265 NW2d 202 (1978). Additional fees may be awarded on appeal. *Zimmers v Zimmers,* 346 Mich 28, 37; 77 NW2d 267 (1956). *Ross v Ross,* 24 Mich App 19, 31; 179 NW2d 703 (1970).

The trial court awarded to plaintiff attorney fees of $3,300, which sum was secured by a lien on the proceeds of the defendant's share of the sale of the marital premises.

Plaintiff's counsel argues, based on time records, that plaintiff's total legal fees incurred for services, including this appeal, will total $14,000 plus out-of-pocket expenses of $1,711.

The trial record indicates that plaintiff does not possess liquid assets. Further, there is a substantial disparity in the earning capacity of the parties.

Additional attorney fees and costs on appeal in the amount of $2,000 are ordered to be secured by a lien on defendant's interest in the marital home.

This Court rejects defendant's cross-claim of error with regard to the disposition of the rototiller and the alimony defendant is required to pay plaintiff. No abuse of discretion is found.

This cause is remanded to the trial court to modify the judgment of the trial court in the particulars mentioned and is otherwise affirmed.

Reversed in part and affirmed in part. We retain no further jurisdiction.