## McLAIN v McLAIN

Docket No. 51493. Submitted April 9, 1981, at Lansing.—Decided July 28, 1981.

Plaintiff, Ester McLain, and defendant, Arland McLain, were divorced in Lenawee Circuit Court, Rex B. Martin, J. The judgment of divorce granted to defendant the couple's marital home and furnishings and custody of the couple's minor child. Plaintiff was granted a second house owned by the couple but subject to a mortgage, and the furnishings therein. Plaintiff was also ordered to pay child support in the amount of money she receives from the Social Security Administration on behalf of the minor child. No alimony was ordered. The court found that money in a bank account opened by the defendant for puposes of the child's education belonged to the child and was not a marital asset. In addition, the court failed to hold defendant responsible for plaintiff's hospital bill for treatment after plaintiff had filed for divorce but before the divorce was granted. Plaintiff appeals the property division and the court's decision not to award alimony to her. *Held:*

1. The trial court did not err by awarding the marital home and furnishings to defendant.

2. The matter is remanded for determination of whether defendant should be ordered to pay any part or all of plaintiff's hospital bill.

3. Plaintiff is entitled to an award of some alimony. The amount of alimony to be awarded will be determined by the trial court on remand.

4. On remand, the trial court should also take further evi-

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 868.

[2] 24 Am Jur 2d, Divorce and Separation §§ 925, 926.

[3] 5 Am Jur 2d, Appeal and Error § 822.
24 Am Jur 2d, Divorce and Separation § 337.

[4] 24 Am Jur 2d, Divorce and Separation §§ 618, 630 *et seq.*

[5] 24 Am Jur 2d, Divorce and Separation § 925.

[6, 7] 10 Am Jur 2d, Banks § 392.

[7] Manner and sufficiency of revocation of tentative ("Totten") trust of savings bank account. 38 ALR2d 1243.

dence on the bank account which defendant claims to be holding in trust for the education of the couple's child. Depending upon whether a valid trust has been established, the trial court should provide in the amended judgment a provision concerning the disposition of the funds should the child die or choose not to pursue her education or, in the event that no irrevocable trust is found, the trial court should determine how to distribute the funds between the parties.

Affirmed in part, reversed in part and remanded.

1. DIVORCE — DIVISION OF PROPERTY — ALIMONY.

The division of marital property and the award of alimony upon divorce are matters within the discretion of the trial court; the Court of Appeals will not reverse an award of property or alimony unless it is convinced that, had it occupied the position of the trial court, it would have reached a different result.

2. DIVORCE — DIVISION OF PROPERTY.

The division of property in a divorce action is not governed by mathematical formulas and the division need not be equal; the primary concern is that the division be fair.

3. APPEAL — FINDINGS OF FACT — DIVORCE — EQUITY — DE NOVO REVIEW.

Inadequate findings of fact by the trial court relative to the alimony, child support and property settlement portions of a judgment of divorce do not preclude review since the Court of Appeals, reviewing equity cases *de novo,* may make findings of fact upon the record before it.

4. DIVORCE — ALIMONY.

Factors to be considered in determining whether alimony should be awarded in a judgment of divorce include: 1) the past relations and conduct of the parties; 2) the length of the marriage; 3) the ability of the parties to work; 4) the source of and amount of property awarded to the parties; 5) the age of the parties; 6) the ability of the parties to pay alimony; 7) the present situation of the parties; 8) the needs of the parties; 9) the health of the parties; 10) the prior standard of living of the parties and whether either is responsible for the support of others; and 11) general principles of equity.

5. DIVORCE — PROPERTY SETTLEMENT.

It is improper for a judgment of divorce to allocate the parties' property to their children.

6. Trusts — Bank Accounts.

   The placing of sums by a person in a bank account as trustee for another does not in and of itself create an enforceable trust.

7. Trusts — Tentative Trusts — Death of Depositor — Presumption of Absolute Trust.

   A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor; what is created is a tentative trust revocable at will until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration such as delivery of the passbook or notice to the beneficiary; if the depositor dies before the beneficiary and without revocation or some decisive act or declaration of disaffirmance, a presumption arises that an absolute trust has been created as to the balance on hand at the death of the depositor.

*James D. Lovewell,* for plaintiff.

*Clyne W. Durst, Jr.,* for defendant.

Before: Cynar, P.J., and Bronson and D. F. Walsh, JJ.

Bronson, J. Plaintiff filed for divorce and custody of her minor child on April 9, 1976. On May 5, 1980, a judgment of divorce was entered ending the parties' marriage of some 16 years.[1] Defendant was awarded custody of the parties' daughter. Plaintiff now appeals by right certain aspects of the property division and the trial court's decision not to award her alimony. The custody disposition is not in issue.

We begin our consideration of the issues raised on appeal by noting the longstanding rule that the division of marital property or an award of alimony is a matter within the trial court's discretion. This Court will not reverse a trial judge's property or alimony decision unless it is convinced

_____

[1] The parties had previously been married in 1946 and divorced in 1953.

that, sitting in the lower court's position, it would have reached a different result. *Wilcox v Wilcox,* 100 Mich App 75, 87; 298 NW2d 667 (1980), *vacated on other grounds* 411 Mich 856 (1981), and cases cited therein.

Plaintiff first argues that the trial court erred in awarding defendant the parties' marital home on North Pearl Street in Tecumseh and the furnishings in the house. We are not convinced that, sitting in the trial judge's position, our decision would have been any different. Plaintiff was also awarded a house with furnishings, albeit this house was still subject to a mortgage, while defendant owned the North Pearl abode outright. Furthermore, the division of property in a divorce action is not governed by mathematical formulas. The division need not be equal. *Christofferson v Christofferson,* 363 Mich 421, 426; 109 NW2d 848 (1961). The primary question is what is fair. *Wilcox, supra.* Defendant and his daughter were to live in the house on North Pearl Street. Since the parties' daughter had grown up in this home, the court's decision in this regard was eminently sensible.

After filing for divorce, plaintiff, who had a history of mental illness, was committed to Ypsilanti State Hospital for a period of some four months. Defendant received a bill for approximately $10,000 as the cost of the hospitalization. Plaintiff claims that the trial court erred in not holding defendant responsible for this bill. Supporting this holding are the facts that the hospitalization occurred after the separation of the parties, was presumably for plaintiff's benefit, and nothing in the record suggests that defendant was responsible for his former wife's mental illness.

While the financial position of the plaintiff and

defendant are not equal, plaintiff apparently does have a monthly income of $311 to $330 per month in social security benfits.[2] Furthermore, the house which plaintiff was awarded includes a rental unit.[3] Finally, plaintiff testified that she had worked in a cafeteria for the Tecumseh School District during the 1977 through 1979 school years. Plaintiff made approximately $80 per week in this capacity during the periods when school was in session.

Nonetheless, we conclude that a remand is in order concerning this aspect of the case. From the record at hand, we are unable to determine if plaintiff is in a position to make payments on the debt. We note that the judgment of divorce orders plaintiff to pay as child support "that sum which is paid by the Social Security Administration on behalf of the minor child, Sherri". It is unclear whether the sum referred to in the support order is in addition to the $311 to $330 a month plaintiff receives or is, in fact, the very same social security benefit. Furthermore, the record at hand strongly suggests that plaintiff may no longer be able to work due to her mental illness. At this time, plaintiff is required to make monthly house payments, although once again the amount is not clear on this record. On remand, the trial court should ascertain whether plaintiff is in any position to support herself and to make payments on the hospital bill. Depending on whether plaintiff is able to pay anything toward the bill on a monthly basis, the trial court may again require plaintiff to pay the whole bill or require defendant to pay the bill or modify the judgment so that each party is

[2] Defendant testified to having a take-home pay of $220 per week.

[3] We are unable to determine from this record, however, whether this unit is in a state of repair fit for rental and, if so, how much this unit can command in rents.

responsible for some portion of the hospitalization costs.

On the question of alimony, the trial court found:

"While plaintiff claims to have never been ill mentally or physically for a day in her life, the number of hospitalizations, the length of those hospitalizations, the testimony of the party and the other evidence during all the hearings in this cause convince the court that this otherwise intelligent woman has had some mental illness which appeared spora[d]ically during the marriage and separation. With a marriage of 16 years and a prior marriage between them of 4 to 7 years, the court is unwilling, at this time to foreclose plaintiff from seeking alimony in the future although none should be ordered now. We realize this may keep the hornets available to cause a commotion in the hornet's nest, but we believe equity requires it."

In our opinion these findings were inadequate under GCR 1963, 517.1 to inform us of how and why the trial court reached its conclusion that at the time it entered judgment in this matter no alimony should be awarded.[4] See *Nicpon v Nicpon,* 9 Mich App 373, 376-378; 157 NW2d 464 (1968). However, this does not preclude review since this is an equity case in which our consideration is *de novo* on the record. *Holbern v Holbern,* 91 Mich App 566, 569; 283 NW2d 800 (1979).

Michigan case law reveals a number of factors which have been considered in evaluating whether alimony should be awarded. These factors include:

1. The past relations and conduct of the parties. *Johnson v Johnson,* 346 Mich 418; 78 NW2d 216 (1956), *Feldman v Feldman,* 55 Mich App 147; 222

---

[4] We can appreciate, however, the difficulty which the trial court must have had in rendering its findings. The testimony adduced at trial was often vague, particularly as concerns plaintiff.

NW2d 2 (1974), *Abadi v Abadi,* 78 Mich App 73; 259 NW2d 244 (1977), *lv den* 402 Mich 870 (1978).

2. The length of the marriage. *Abadi, supra.*

3. The ability of the parties to work. *Hoffman v Hoffman,* 9 Mich App 715; 158 NW2d 78 (1968), *Van Ommen v Van Ommen,* 25 Mich App 652; 181 NW2d 634 (1970), *Abadi, supra.*

4. The source of and amount of property awarded to the parties. *Pinchuk v Pinchuk,* 317 Mich 523; 27 NW2d 81 (1947), *Schaffer v Schaffer,* 37 Mich App 711; 195 NW2d 326 (1972), *Abadi, supra.*

5. The age of the parties. *Johnson, supra, Abadi, supra.*

6. The ability of the parties to pay alimony. *Ross v Ross,* 24 Mich App 19; 179 NW2d 703 (1970), *Hoffman, supra.*

7. The present situation of the parties. *Johnson, supra, Hoffman, supra.*

8. The needs of the parties. *Abadi, supra.*

9. The health of the parties. *Johnson, supra, Abadi, supra.*

10. The prior standard of living of the parties and whether either is responsible for the support of others. *Johnson, supra.*

11. General principles of equity. *Stathas v Stathas,* 1 Mich App 510; 136 NW2d 713 (1965), *lv den* 377 Mich 698 (1966), *Hoffman, supra, Ross, supra.*

Applying these standards, we conclude that plaintiff must be awarded some alimony. Almost every factor cuts in favor of an award, and those that do not are neutral only. We are here concerned with the marriage of some duration. Defendant is definitely able to work and has held his current job since 1950. It is unclear on this record whether plaintiff is capable of working at all. However, if she has any capacity to work said capacity seems to be intermittent, and it is clear

that plaintiff has no ability to perform anything more taxing than unskilled labor. Overall, by the trial court's figures, defendant received $22,761 worth of realty and money along with a 1969 car, furnishings, and his interest in his pension. Plaintiff, on the other hand, received realty and money with a current value of $14,672 and furnishings. The only testimony concerning the source of the marital property was from plaintiff, who indicated that she was largely responsible for the accumulation of all marital assets.[5] The record does not reveal the age of defendant. Plaintiff, however, is 55 years of age, and this fact will probably be detrimental to her ability to find work, even if she is able. Clearly, plaintiff is in no position to pay alimony. While defendant is by no means a wealthy man, his income does leave him with the ability to pay some alimony. This is particularly true given that he owns the home he was awarded free and clear. Plaintiff's mental health is obviously not good. It is unclear on this record to what extent her illness impairs her present ability to function on a day-to-day basis. In terms of needs, apart from food and clothing, plaintiff must have sufficient funds to make a house payment. Defendant has no house payments. Furthermore, given plaintiff's history of mental illness, it seems likely that she will need further professional help in the future.

On the record at hand, we cannot say how much alimony plaintiff should be awarded. We therefore remand to allow the trial court to make this determination. The award of alimony ultimately rendered can be taken into account by the trial court upon reconsideration of the parties' responsi-

---

[5] Admittedly, much of plaintiff's testimony regarding the source of the marital property seems difficult to believe. However, defendant never attempted to rebut this testimony.

bility for the hospital bill. The trial judge may take further evidence to aid in the resolution of this matter.

Plaintiff's last claim on appeal is that the trial court erred in ordering "that the amounts now held in deposit with the First Federal Savings and Loan Association in the name of Arland McLain, Trustee for Sherri McLain, shall be the sole and separate property of Sherri McLain", the parties' daughter. Plaintiff correctly notes that it is improper for a judgment of divorce to allocate the parties' property to their children. *Snyder v Snyder*, 42 Mich App 573, 579-580; 202 NW2d 504 (1972), and authorities cited therein. As concerns the account in question, however, the trial court found:

> "The defendant has accumulated an account for Sherri's education. This has come from the Social Security payments made to Sherri as a result of the plaintiff's disability. We note that if plaintiff *[sic]* had been a spendthrift unaware of or unresponsive to his obligations to Sherri, this sum would never have accumulated as it did. Whoever has custody should have that fund and hold it in trust for Sherri. This is the father. The sum rightfully belongs to the daughter for her benefit and is not really an asset of either of the parties or of this marriage."

The question which must be resolved, then, is whether Sherri had any enforceable legal or equitable title in the savings account in the name of "Arland McLain, Trustee for Sherri McLain". MCL 489.713; MSA 23.540(313) provides in perinent part:

> "Whenever an account is opened by any person, describing himself in opening the account as trustee for another and no other or further notice of the existence

and terms of a legal and valid trust than such description has been given in writing to the association, in the event of the death of the person so described as trustee, the withdrawal value of the account or any part thereof, together with the dividends or interest thereon, may be paid to the person for whom the account was thus stated to have been opened, and the account and all additions thereto shall be the property of the person. The payment or delivery to the beneficiary or designated person, or a receipt or acquittance signed by the beneficiary, or designated person, for any payment or delivery is a valid and sufficient release and discharge of an institution for the payment or delivery so made."

See, also, MCL 487.702; MSA 23.302.

In *May v American Savings Ass'n,* 46 Mich App 668, 672-673; 208 NW2d 619 (1973), this Court stated that MCL 489.713; MSA 23.540(313) and MCL 487.702; MSA 23.302 do not by their terms make payment to the beneficiary mandatory even upon the death of the named trustee. Rather, the *May* Court saw the purpose of the statutes as the protection of financial institutions and not as a codification of any aspect of the law of trusts. In *Boyer v Backus,* 282 Mich 593, 617; 276 NW 564 (1937), *cert den* 305 US 644; 59 S Ct 147; 83 L Ed 416 (1938), *reh den* 305 US 674; 59 S Ct 248; 83 L Ed 437 (1938), the Michigan Supreme Court held that the placing of sums by one in a bank account as trustee for another does not in and of itself create an enforceable trust. In so holding, the Court relied on *In re Totten,* 179 NY 112; 71 NE 748 (1904), in which the New York Court of Appeals stated:

"After much reflection upon the subject, guided by the principles established by our former decisions, we announce the following as our conclusion: A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish

an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies *or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary.* In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor." *Id.,* 125-126. (Emphasis added.)

During the trial, defendant indicated that he was holding the money for his daughter's education. However, no evidence exists that this intent was ever conveyed to the daughter, Sherri, the intended beneficiary. Furthermore, no evidence exists concerning what would become of the trust funds should Sherri choose not to further her education. Defendant's explicit statement that the trust was for his daughter's education suggests that he may have actually intended a future gift of the funds contingent on Sherri furthering her education.

This issue was not vigorously litigated at trial. Apparently, the parties did not fully envision the ramifications of this problem.[6] Thus, rather than simply declare the account a marital asset, on remand the trial court should take further evidence on the issue of the account's status. Obviously, whether defendant has ever withdrawn money from the account will be relevant to a determination of this issue. If the trial court believes on remand that "unequivocal" evidence supports a finding that a valid trust has been established for Sherri's education, giving her a cause of action should defendant not pay over the funds, it

[6] On appeal, each side merely makes conclusory statements concerning the ownership of the account.

should also provide in the amended judgment a provision concerning the disposition of the funds should she die or choose not to pursue her education. Assuming no irrevocable trust is found on remand, it is in the trial court's discretion to determine how this marital asset should be distributed.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion. We retain jurisdiction. All remand proceedings and findings of fact to take place within 90 days of the date this opinion is officially released. No costs, neither party having prevailed in full.