WILKINS v WILKINS

Docket No. 82259. Submitted October 16, 1985, at Lansing.—Decided
March 17, 1986.

Plaintiff, Joan E. Wilkins, and defendant, George S. Wilkins, were
divorced in the Livingston Circuit Court, Bert M. Hensick, J.
The court made awards of custody, child support, division of
property, alimony and alimony in gross. Defendant appealed
the custody and division of property awards. *Held:*

1. The court did not err or abuse its discretion in the award
of custody pursuant to the best interests of the children as
specified by the Child Custody Act.

2. The court's findings of fact were adequate.

3. The burden of proof rests with the party seeking a new
trial on the basis of judicial misconduct to establish actual
prejudice resulting therefrom. Defendant did not demonstrate
any prejudice resulting from alleged judicial misconduct so as
to entitle him to a new trial on that basis.

4. The division of marital property in a divorce action is
within the trial court's discretion and, although review of a
divorce case is *de novo,* the Court of Appeals will not reverse
the trial court's division of property unless it is convinced that

REFERENCES

Am Jur 2d, Appeal and Error §§ 136, 705.

Am Jur 2d, Divorce and Separation §§ 520 *et seq.,* 864 *et seq.,* 1018
*et seq.*

Am Jur 2d, Infants § 43.

Am Jur 2d, New Trial §§ 51-55.

Effect of trial court giving consideration to needs of children in
making property division—modern status. 19 ALR4th 239.

Pension or retirement benefits as subject to award or division by
court in settlement of property rights between spouses. 94 ALR3d
176.

Gestures or facial expressions of trial judge in criminal case,
indicating approval or disapproval, belief or disbelief, as ground
for relief. 49 ALR3d 1186.

Spouse's acceptance of payments under alimony or property or
settlement or judgment support provisions of divorce judgment as
precluding appeal therefrom. 29 ALR3d 1184.

See the annotations in the ALR3d/4th Quick Index under Judges
§ 5.

it would have reached a different result had it been sitting in the lower court's position. No mathematical formulas govern the division of property in a divorce action and the division need not be equal; the primary question is what is fair. A trial court, in determining the distribution of marital property, must consider the source of the property, the length of the marriage, the needs of the parties, the parties' earning abilities and the cause of the divorce.

5. The court did not err in granting alimony in gross based on defendant's having obtained two advanced degrees during the course of the marriage.

6. A determination as to alimony necessitates consideration of: (1) the duration of the marriage; (2) contributions of the parties to the joint estate (sources of property); (3) age; (4) health; (5) station in life; (6) necessitites and circumstances; and (7) earning ability of the parties. The court did not abuse its discretion in the award of alimony.

7. The party challenging an order of child support on appeal bears the burden of showing an abuse of discretion by the trial court, however, such abuse may be established more readily than in cases historically heard at law, and where the Court of Appeals is convinced that it would have reached a different result if it were in the position of the trial court it will reverse or modify the award. One of the factors to be considered in determining the amount of an award of child support is a parent's ability to pay, and a court is not limited to consideration of the parent's actual income but also may look to the parent's unexercised ability to earn. The court did not abuse its discretion in awarding child support.

Affirmed.

J. P. NOECKER, J., concurred. He wrote separately to note that it is legal error for a court in a child custody dispute to conclude, solely on the basis of a child's age, that the child is incapable of expressing a preference as to custody, but that error does not rise to the level of a clear legal error on a major issue requiring a redetermination of custody where, under the circumstances, an expression of preference would not have affected the decision. He also concurred in the finding that the trial court did not err in awarding alimony in gross based on defendant's having obtained two advanced degrees during the course of the marriage, but found that the conclusion was based on the principle that marital property should be divided equitably. He believed that an equitable division of property should be affirmed on appeal regardless of whether the advance degrees earned during the marriage are considered as awarding a division of property or awarding alimony.

OPINION OF THE COURT

1. PARENT AND CHILD — CHILD CUSTODY — APPEAL.

Review of child custody cases by the Court of Appeals is *de novo;* however, to ensure stability and finality in the resolution of child custody matters, all orders and judgments of the trial court must be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue (MCL 722.28; MSA 25.312[8]).

2. NEW TRIAL — JUDICIAL MISCONDUCT — BURDEN OF PROOF.

The burden of proof rests with the party seeking a new trial on the basis of judicial misconduct to establish actual prejudice resulting therefrom.

3. DIVORCE — DIVISION OF MARITAL PROPERTY — APPEAL.

The division of marital property in a divorce action is within the trial court's discretion and, although a review of a divorce case is *de novo,* the Court of Appeals will not reverse the trial court's division of property unless it is convinced that it would have reached a different result had it been sitting in the lower court's position.

4. DIVORCE — DIVISION OF MARITAL PROPERTY.

No mathematical formulas govern the division of property in a divorce action and the division need not be equal; the primary question is what is fair.

5. DIVORCE — DIVISION OF MARITAL PROPERTY.

A trial court, in determining the distribution of marital property, may consider the source of the property, the length of the marriage, the needs of the parties, the parties' earning abilities and the cause of the divorce.

6. DIVORCE — MARITAL PROPERTY — POSTGRADUATE DEGREES.

A postgraduate degree obtained by one spouse during the marriage as an end product of a concerted family effort to which both spouses contributed is a marital asset subject to division upon divorce; the value of that degree should be determined in light of the sources and extent of financial support given the degree holder while going to school, the overall division of the parties' marital property, the length of the marriage after the degree was obtained, and an estimate of the financial benefit of the degree to its holder.

7. DIVORCE — ALIMONY.

A determination as to alimony necessitates consideration of: (1) the duration of the marriage; (2) contributions of the parties to

the joint estate (sources of property); (3) age; (4) health; (5) station in life; (6) necessities and circumstances; and (7) earning ability of the parties.

8. DIVORCE — CHILD SUPPORT — APPEAL.

The party challenging an order of child support on appeal bears the burden of showing an abuse of discretion by the trial court, however, such abuse may be established more readily than in cases historically heard at law, and where the Court of Appeals is convinced that it would have reached a different result if it were in the position of the trial court it will reverse or modify the award.

9. DIVORCE — CHILD SUPPORT — ABILITY TO PAY — ABILITY TO EARN.

One of the factors to be considered in determining the amount of an award of child support is a parent's ability to pay, and a court is not limited to consideration of the parent's actual income but also may look to the parent's unexercised ability to earn.

CONCURRENCE BY J. P. NOECKER, J.

10. INFANTS — CHILD CUSTODY — APPEAL.

*It is legal error for a court in a child custody dispute to conclude, solely on the basis of a child's age, that the child is incapable of expressing a preference as to custody, but that error does not rise to the level of a clear legal error on a major issue requiring a redetermination of custody where, under the circumstances, an expression of preference would not have affected the decision (MCL 722.28; MSA 25.312[8]).*

*Jacob F. Fahrner, Jr.,* for plaintiff.

*Kenneth B. Williams,* for defendant.

Before: V. J. BRENNAN, P.J., and BEASLEY and J. NOECKER,* JJ.

V. J. BRENNAN, P.J. Plaintiff, Joan E. Wilkins, and defendant, George S. Wilkins, were married on August 10, 1968. Three children were born during their marriage: George S. Wilkins, III, born February 14, 1974; Charles M. Wilkins, born July

* Circuit judge, sitting on the Court of Appeals by assignment.

14, 1977; and Nicholas J. Wilkins, born September 19, 1979. Plaintiff and defendant were divorced by order of Livingston County Circuit Court Judge Bert M. Hensick on December 20, 1984. Defendant appeals as of right from the custody award and division of marital property.

Plaintiff filed her complaint of divorce with the Livingston County Circuit Court on December 6, 1982. In the complaint, she requested custody of the three minor children and asked that the parties' personal and real property be equitably divided.

Defendant filed a counterclaim for divorce on January 31, 1983. Defendant requested joint legal custody of the children, but asked that physical custody be awarded to plaintiff. Defendant also filed his answer to plaintiff's complaint on January 31, 1983. He neither admitted nor denied plaintiff's assertion that she should be awarded physical custody of the children.

On March 29, 1984, plaintiff filed a petition to permanently remove the children from Michigan. In the petition, plaintiff stated that defendant had had notice for several months of her intention to return with the children to Evanston, Illinois. She asserted that the move to Illinois would improve the general quality of life for herself and the children and was not intended to deprive defendant of contact with the children. Plaintiff further claimed that she was willing to share the reasonable cost of transporting the children to visit defendant and to otherwise preserve and foster defendant's relationship with the children. No answer to the petition was filed by defendant.

Trial was held on April 6, June 28 and 29, and August 17, 1984.

Followng the submission of briefs and written closing arguments, the trial court rendered a writ-

ten opinion on the issues raised at trial. The trial court indicated that custody had become an issue, but found that there was no indication prior to trial that defendant wanted physical custody. Moreover, the trial court found that it was evident from defendant's testimony that he was not planning to obtain physical custody of the children. Despite the absence of what the trial court believed to be any actual dispute as to physical custody, the trial court examined and applied the best interests of the child factors set forth in § 3 of the Child Custody Act. Under factor (i), the reasonable preference of the children, the trial court found that, because the children were 10 years old and younger, they were not of a sufficient age to express a preference. The trial court found that, because several of the other factors preponderated in favor of plaintiff, physical custody would be awarded to plaintiff. Nonetheless, joint legal custody was awarded to the parties.

A hearing to settle and enter the judgment was held on November 19, 1984. At that time, it was revealed that, prior to the commencement of proceedings on one of the days of trial, Judge Hensick had, without knowing that they were involved in the trial, given plaintiff and the minor children a tour of the courthouse's holding cells. The judge stated that there was no harm meant or intended or resulting from his contact with the plaintiff and the children, but he admitted that he had not informed the attorneys of the meeting. Defendant claimed that prejudice had resulted from the meeting.

The judgment of divorce was entered on December 21, 1984. Defendant was ordered to pay $375 a week in child support. He was required to pay alimony to plaintiff in the amount of $25,000 over the next five years and, in addition, $12,000 a year

in permanent alimony" until plaintiff or defendant died or plaintiff remarried. Two-thirds of the parties' equity in the marital home, or $25,000 in cash, was awarded to plaintiff. The parties' condominium, located in Brighton, Michigan, as well as the parties' one-quarter acre lot in Rotunda, Florida, were awarded to defendant. The judgment also provided for the awarding of certain articles of personal property to each of the parties. The present value of defendant's retirement fund at Ford was divided equally between the parties. Defendant's retirement plan and stock option plan were awarded to defendant.

Defendant claims that the trial court reversibly erred in its determination that physical custody should be awarded to plaintiff.

Under § 7 of the Child Custody Act, MCL 722.21 *et seq.;* MSA 25.312(1) *et seq.,* the trial court is to award custody pursuant to the "best interests of the child". MCL 722.27; MSA 25.312(7); *Deel v Deel,* 113 Mich App 556; 317 NW2d 685 (1982). The best interests of the child are also considered in joint custody cases. See MCL 722.26a; MSA 25.312(6a). The factors to be considered in determining what is in the best interests of the child are specified in § 3 of the Child Custody Act as follows:

"(a) The love, affection, and other emotional ties existing between the parties involved and the child.

"(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and continuation of the educating and raising of the child in its religion or creed, if any.

"(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

"(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

"(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

"(f) The moral fitness of the parties involved.

"(g) The mental and physical health of the parties involved.

"(h) The home, school, and community record of the child.

"(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference.

"(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.

"(k) Any other factor considered by the court to be relevant to a particular child custody dispute." MCL 722.23; MSA 25.312(3).

Review of the trial court's findings by this Court is *de novo. DeGrow v DeGrow,* 112 Mich App 260, 265; 315 NW2d 915 (1982). A reviewing court must appraise the evidence apart from the trial court's findings. *Deel v Deel, supra.* Section 8 of the Child Custody Act provides that:

"To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28; MSA 25.312(8).

Our review of the records indicates that the trial court carefully considered all of the above factors of § 3. We find his findings of fact were sufficiently supported by the record. Also, we find no abuse of discretion or legal error.

Defendant's next claim is that the trial court made inadequate findings of fact in regard to plaintiff's petition to remove the children to Illinois. The record does not support this claim. To the contrary, the court's findings are adequate.

Defendant claims that he is entitled to a new trial because of the trial judge's contact with plaintiff and the children.

In order to justify the granting of a new trial on the basis of allegations of misconduct by the trial judge, it must be established that there was actual prejudice resulting from the alleged misconduct. *Cole v DAIIE,* 137 Mich App 603, 610; 357 NW2d 898 (1984); *Elsasser v American Motors Corp,* 81 Mich App 379, 388; 265 NW2d 339 (1978).

In the instant case, defendant failed to establish any prejudice resulting from Judge Hensick's contact with plaintiff and the children and his failure to promptly inform the attorneys of his contact. At the November 19, 1984, post-trial hearing, Judge Hensick explained his actions. He explained that, at the time of his contact with plaintiff and the children, he was unaware that plaintiff and the children were involved in any litigation before the court. He also explained that there was no discussion of any issue relating to the litigation during the tour of the holding cell facilities. He also asserted that the contact with plaintiff and the children had no impact on the manner in which he treated the parties during the litigation. Furthermore, the trial court record reveals no partiality in favor of either of the parties as the result of the judge's contact. Nor was there any assertion made in this regard by defendant. Rather, the transcript of the November 19, 1984, hearing reveals that defendant accepted Judge Hensick's explanation of his contact with plaintiff and the children. At that time, defendant did not indicate

any displeasure with the judge's contact and did not request a new trial. Defendant has failed to establish any actual prejudice so as to entitle him to a new trial.

Defendant also argues that the trial court reversibly erred in its division of marital property and award of alimony and child support.

The division of marital property in a divorce action is within the trial court's discretion. Divorce cases are reviewed *de novo.* However, this Court will not reverse the trial court's division of property unless it is convinced that it would have reached a different result had it been sitting in the lower court's position. *Ozdaglar v Ozdaglar,* 126 Mich App 468, 470; 337 NW2d 361 (1983). *McLain v McLain,* 108 Mich App 166, 168-169; 310 NW2d 316 (1981). No mathematical formulas govern the division of property in a divorce action and the division need not be equal. *Christofferson v Christofferson,* 363 Mich 421, 426; 109 NW2d 848 (1961); *Ozdaglar, supra.* The primary question is what is fair. *McLain, supra,* p 169. In determining the distribution of property, the trial court considers the source of the property, the length of the marriage, the needs of the parties, their earning ability and the cause of the divorce. *Ozdagler, supra.*

In the instant case, defendant claims that, as a whole, the division of property was unfair. Here, plaintiff was awarded $43,500 worth of tangible property while defendant received $21,000 worth of property.

In dividing the property, the trial court considered fault as well as the current and future income and income potential of the parties. While the trial court found that neither party was totally without fault in the breakup of the marriage, fault was weighted against defendant by virtue of his infidelity. In addition, it was clear from the record

that plaintiff's current and future income potential was extremely low in comparison with defendant's. Even if plaintiff returns to the job market, there was no evidence that she would ever be able to match defendant's income potential. Because of the parties' disparate income earning potential, the division of property cannot be said to have been unfair.

In addition to arguing that the overall division of property was inequitable, defendant asserts that his master's degree in economics and Ph.D. in chemical engineering should not have been considered as marital property and divided between the parties as "alimony in gross". In *Woodworth v Woodworth,* 126 Mich App 258; 337 NW2d 322 (1983), *lv den* 419 Mich 856 (1984), this Court determined that fairness dictated that the spouse who did not earn an advanced degree be compensated whenever the advanced degree is the product of a concerted family investment. This Court recognized that the degree holder has expended great effort to obtain the degree not only for himself or herself but also to benefit the family as a whole. The other spouse has shared in this effort and contributed in other ways as well, not merely as a gift to the student spouse nor merely to share individually in the benefits, but also to help the marital unit as a whole where a degree is obtained during the course of a marriage.

This Court's determination in *Woodworth* was based, at least in part, on this Court's rulings in *Vaclav v Vaclav,* 96 Mich App 584; 293 NW2d 613 (1980), and *Moss v Moss,* 80 Mich App 693; 264 NW2d 97 (1978), *lv den* 402 Mich 946 (1978). In those cases, this Court held that an advance degree is an asset which could be considered in a property settlement. However, in *Woodworth,* this Court found that the existence of an advance

degree would be better considered in awarding alimony than in distributing property. This Court explained that in awarding alimony, one of the factors to be considered by the trial court is the parties' financial condition and their ability to support themselves.

In determining the value of the degree, this Court found in *Woodworth* that the trial court should review the following factors:

"[T]he length of the marriage after the degree was obtained, the sources and extent of financial support given * * *, and the overall division of the parties' marital property. In determining the degree's present value, the trial court should estimate what the person holding the degree is likely to make in that particular job market and subtract from that what he or she would probably have earned without the degree." 126 Mich App 269.

In the instant case, the trial court found that the degrees obtained by defendant during the marriage should be evaluated and the value distributed between the parties. His distribution of the value of the degrees took the form of an award of alimony in gross to plaintiff in the amount of $25,000. At trial, there was testimony that the value of the doctoral degree obtained by defendant during marriage was worth $1,476,876 over the course of defendant's remaining years of employability. This figure was discounted to $899,417 in present value. This evidence was presented by Dr. Young-Iob Chung, an economics expert. On the other hand, defendant contended that the degrees were of no vlaue because he was no longer employed in a teaching capacity or in the economics or chemical engineering fields. His witness, Rollin S. MacNichol, a vice president of Libby-Owens-Ford, testified that defendant's economics degree

and Ph.D. in chemical engineering had no effect on defendant's employment with Libby-Owens-Ford.

Although it is clear that the trial court did not accept Dr. Chung's evaluation of the degrees, it appears that the trial court believed that the degrees enhanced defendant's earning potential in his present position. In light of the evidence that the degrees had a value far in excess of that determined by the trial court, it cannot be said that the trial court erred in allowing plaintiff $25,000 of alimony in gross on the basis of defendant's having obtained two advance degrees during the course of the parties' marriage.

Defendant also argues that the trial court abused its discretion in the amount of alimony and child support awarded. In computing an award of alimony, the trial court must consider several factors, including the necessities, circumstances and earning abilities of both parties. *Giesen v Giesen,* 140 Mich App 335, 339; 364 NW2d 327 (1985). In *Parrish v Parrish,* 138 Mich App 546, 557; 361 NW2d 366 (1984), this Court enumerated seven factors which were to be considered in determining the amount of alimony to be awarded:

"(1) the duration of the marriage, (2) the contributions of the parties to the joint estate, (3) the age of the parties, (4) their health, (5) their stations in life, (6) the necessities and circumstances of the parties, and (7) the earning ability of the parties".

This Court reviews an order of alimony *de novo,* but it "will not modify an alimony award unless it is convinced that, sitting in the position of the trial court, it would have reached a different result". *Parrish, supra,* p 553.

In determining the amount of child support to be awarded, much discretion is vested in the trial

court, and the exercise of that discretion generally is presumed to be correct. *Hakken v Hakken,* 100 Mich App 460, 464; 298 NW2d 907 (1980). The party appealing from the child support order bears the burden of showing clear abuse of discretion. Because of the historically equitable nature of child support proceedings, however, such an abuse may be established more readily than in cases historically heard at law, and this Court will reverse or modify the award if convinced that it would have reached a different result if it had been in the position of the trial court. *Dunn v Dunn,* 105 Mich App 793, 797; 307 NW2d 424 (1981). One of the factors to be considered in determining the amount of child support is the parent's ability to pay. Nonetheless, the trial court is not limited to consideration of the parent's actual income and may also look to the parent's unexercised ability to earn. *Dunn, supra,* pp 797-798.

In the instant case, defendant argues that the trial court abused its discretion in the amount of alimony and child support awarded because these amounts, together with other expenses such as the children's tuition, would leave defendant with only $450 a month on which to live. The $450 figure, however, was based solely on the amount defendant earned in salary. Defendant ignored the fact that he also received bonuses from his employment. Based on the bonus awarded for the latter half of 1983 and projections that his employer's profits in 1984 would equal or exceed those of 1983, defendant's bonus for 1984 was likely to be in excess of $24,000. Given this added income and defendant's ability to seek a modification of the awards if his 1984 bonus is later found to be substantially smaller than anticipated, it cannot be said that the trial court abused its discretion in

the amounts awarded to plaintiff in alimony and child support.

Affirmed. We retain no further jurisdiction. Costs to be paid by defendant.

BEASLEY, J., concurred.

J. P. NOECKER, J. *(concurring)*. The trial court found, solely on the basis of the ages of the children, that the children were of insufficient age to express a preference as to custody.[1] In *Flaherty v Smith,* 87 Mich App 561; 274 NW2d 72 (1978), a panel of this Court held that in a close case it would be "clear legal error on a major issue", as is contemplated by MCL 722.28; MSA 25.312(8), for the trial court to conclude, solely on the basis of the child's age, that the child was incapable of expressing a preference as to custody. The implication of that case and of *In re Custody of James B,* 66 Mich App 133; 238 NW2d 550 (1975), was that the trial court must exercise, rather than abdicate, its discretion with respect to the determination of whether a child is of sufficient age to express a preference.

In addition, several panels of this Court have held that the trial court must evaluate each of the "best interest" factors of MCL 722.23; MSA 25.312(3) when deciding a custody issue. *Arndt v Kasem,* 135 Mich App 252; 353 NW2d 497 (1984); *Williamson v Williamson,* 122 Mich App 667; 333 NW2d 6 (1982). Thus, this writer would conclude that it is legal error to conclude, solely on the basis of a child's age, that the child is incapable of

[1] During the course of the trial, one child was ten years old and the others attained the ages of seven and five. While this writer might agree that a child might, at some point, be incapable of expressing a preference solely because of his age, that cannot be said of the children in this case. Children of these ages are capable of expressing a preference, although the weight given to those expressions might be reduced by the age or immaturity of the particular child.

expressing a preference. Yet, the majority concludes that there was no legal error with respect to the custody determination. In this writer's opinion, the summary conclusion by the trial court that the children were of insufficient age to express a preference was error, but does not amount to clear legal error on a major issue.

In both *In re Custody of James B, supra,* and *Flaherty, supra,* the Court noted that the custody issue was a close one. In the case at bar, the trial court found that the best interest factors preponderated heavily in favor of the mother. This writer, and the majority, agree with that conclusion. It is quite clear that the outcome of this case would not have been affected had the trial judge determined that the children expressed a preference to live with their father.

Where the best interest factors, other than the preference of the children, weigh heavily in favor of one party and where the age of the children is such that their preferences, albeit expressible, cannot overcome the other factors, this writer would conclude that the failure to exercise discretion to determine whether the children are of sufficient age to express a preference is not "clear legal error on a major issue". The stated purpose of that standard limiting appellate review is to "expedite the resolution of a child custody dispute by prompt and final adjudication". MCL 722.28; MSA 25.312(8). That purpose would be ill-served if reversal were required by the trial court's failure to inquire as to a child's capacity to express a preference, under circumstances where the expression of a preference would not affect the outcome.

This writer agrees that the trial court did not err in awarding $25,000 in alimony in gross on the basis of defendant's obtaining two advanced degrees during the course of the parties' marriage. This

conclusion is not based on the premise that an advanced degree is properly considered as property. *Woodworth v Woodworth,* 126 Mich App 258; 337 NW2d 322 (1983), *lv den* 419 Mich 856 (1984). Nor does it run afoul of the view that an advanced degree is not properly considered as property. *Olah v Olah,* 135 Mich App 404; 354 NW2d 359 (1984). Rather, it is based on the principle that marital property divisions should be equitable. While the effort at the semantical characterization of the path to that result might be interesting, the conclusion that the path is a "property" path or an "alimony" path should not change the appellate review of the results. The division of marital property in this case is equitable, and such a result should be affirmed.