ANGELINE SHIMEL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; DANIEL D. SHIMEL and BETTY A. SHIMEL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shimel v. Commissioner
Docket Nos. 4682-86;[1]
2631-87
United States Tax Court
T.C. Memo 1989-376; 1989 Tax Ct. Memo LEXIS 375; 57 T.C.M. (CCH) 1088; T.C.M. (RIA) 89376; July 26, 1989
David M. Hess, for the petitioner in docket No. 4682-86. Paul L. B. McKenney and George J. Haddad, for the petitioners in docket No. 2631-87. Jacqueline M. Hotz, for the respondent. RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent determined deficiencies in petitioners' Federal *376 income taxes in the following amounts: Petitioner
Docket No.
Year
Deficiency
Angeline Shimel
4682-86
1981
$ 2,473.00
1982
2,239.00
1983
2,290.00
Daniel D. Shimel and
2631-87
1983
5,903.98
Betty A. Shimel
The sole issue for decision is whether payments made by Daniel Shimel to Angeline Shimel were in the nature of a property settlement or in the nature of an allowance for support. Respondent has taken inconsistent positions in these consolidated cases. On brief, respondent maintains that the amounts received by Angeline Shimel were part of a property settlement and are neither taxable to her nor deductible by Daniel Shimel. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner Angeline Shimel (Angeline) resided in Roseville, Michigan when she filed her petition in this case. She filed Federal income tax returns for the taxable years 1981, 1982, and 1983. Petitioners Daniel D. Shimel (Daniel) and Betty A. Shimel, [2] husband and wife, resided in Rochester, Michigan when they filed their petition *377 in this case. They filed a joint Federal income tax return for the taxable year 1983. Angeline and Daniel were married on April 24, 1971. At the time of the marriage, Angeline had $ 10,000, and Daniel had minority interests in two McDonald's franchises. During the marriage, Daniel acquired three additional interests in McDonald's franchises. Daniel worked with his interests in the McDonald's franchises during the marriage, and Angeline was a homemaker. She occasionally worked part-time, without compensation, at a McDonald's restaurant in which Daniel had an interest. No children were born of the marriage. Daniel filed a complaint for divorce on January 17, 1977, and Angeline filed a cross-complaint for divorce two days later. Angeline was not employed at that time. During the settlement negotiations and the divorce proceedings, Daniel was represented by Leslie H. Kutinsky. Angeline was represented by Samuel J. Spatafora during settlement negotiations. Subsequently, William E. Bufalino was substituted as Angeline's attorney of record in the divorce proceedings. On March 2, 1977, Mr. *378 Spatafora requested $ 200 a week as support for Angeline. On March 4, 1977, Daniel was ordered to make all monthly mortgage payments, to pay for taxes, insurance, repairs, all utility charges of the marital residence, and to pay all of Angeline's necessary medical, dental, and hospital expenses during the pendency of the divorce proceedings. By letter dated February 22, 1978, Mr. Spatafora informed Mr. Kutinsky that Angeline was without money for her own maintenance and was about to apply for public assistance. No temporary alimony was awarded to Angeline. On June 1, 1978, Angeline, Daniel, and their respective counsel, negotiated and reached a settlement agreement which Mr. Kutinsky placed on the record before Macomb County Circuit Court Judge Edward J. Gallagher. One of Daniel's primary considerations during the negotiations was that Angeline would have no claim to his restaurant interests. At the June 1 hearing, Mr. Kutinsky stated on the record: The property settlement is as follows: The marital home will be awarded to the Plaintiff-wife, free and clear of any claim of the Defendant-husband. She will assume and be responsible for all mortgage payments and taxes on the *379 property. In addition, she will be awarded all of the household furniture and furnishings located in the property. Also, she will get the title to the automobile that she is driving now, which is a Gran Torino Ford. In addition, she will be awarded the vacant lot in Manistee, provided, however, that the mineral rights on that property will be divided equally between the two parties, but she will have it subject to that. In addition, the Plaintiff-wife will receive the sum of $ 134,000.00 alimony, payable in the following manner: $ 10,000 forthwith. The balance of $ 124,025.00, payable in equal monthly installments. $ 1,025.00 per month for a period 121 months. The parties have agreed that this alimony provision is not modifiable under any circumstances by either of the parties hereto. Further, that the Defendant-husband, will retain his interest, cash surrender of all life insurance policies. He will retain all of his interest in any and all profit-sharing plans in his corporation, he is involved in McDonald's, having an interest in five McDonald's; that also his pension interest in any of those corporations. Further, he will retain the Edison stock. All of the household *380 furniture and effects in the apartment, his gun collection, all business interests that he has, which are involved in McDonald's, all of the assets that he has got interest at 20% and 25% stockholder in each one of the corporations. Angeline and Daniel acknowledged that they understood and agreed to the property settlement. Subsequent to the hearing on June 1, 1978, Angeline refused to execute the settlement documents. Angeline then obtained a new attorney. Angeline's new attorney refused to approve the settlement agreement that Mr. Kutinsky stated on the record. As a result, Mr. Kutinsky filed a motion for entry of judgment. On June 22, 1978, Angeline's attorney in turn filed a motion for a new trial alleging fraud, duress, and mutual mistake. A hearing on the motions was scheduled for June 26, 1978. At the June 26 hearing, in presenting his position before Judge Gallagher, Mr. Kutinsky made the following statement concerning the marital property and the $ 134,000 payment: It comes out to one hundred thirty-four thousand plus approximately thirty-five to forty thousand dollars additional assets, the marital home, property in Manistee, mineral rights and the assets she *381 had. So, she ended up with a marriage of six years with $ 176,000. It is our representation that his assets, and we explained it on three bases that we based it on, came to no more than of an increase then $ 280,000. I showed Mr. Statford the three methods of doing that: One was the buy-sell agreement; one was fifty percent of the net assets of the business; that being the value of doing business as McDonald's gross of one million, the sales price is five hundred thousand less the assets and liabilities. Averaging out those three methods the total increased assets are $ 260,000. We gave the parties $ 134,000 in a spread out method. In addition she received half of the other assets. At the June 26 hearing, Angeline's attorney alleged that Daniel's assets had been understated. Judge Gallagher ruled that there was no fraud, duress, or mutual mistake and entered a judgment of divorce which incorporated the provisions of the settlement agreement that had been outlined on the record. The judgment of divorce signed by Judge Gallagher was drafted by Mr. Kutinsky. The settlement agreement, as incorporated into the judgment of divorce, contained sections with the headings "PROPERTY *382 SETTLEMENT AND PROVISION IN LIEU OF DOWER," and "ALIMONY." Under the heading "PROPERTY SETTLEMENT AND PROVISION IN LIEU OF DOWER," the agreement provided that Angeline would receive the marital home, subject to a mortgage which she agreed to pay. She would also receive the household furniture and furnishings, and a 10-acre property with a half interest in the mineral rights to the property. Daniel would receive a half interest in the mineral rights of the above-mentioned 10-acre property, all interest in the apartment in which he resided and its furniture and furnishings, all interest in life insurance policies, 50 shares of Detroit Edison preferred stock, and any and all interests he had in McDonald's restaurants. Under the heading "ALIMONY," the agreement provided: Pursuant to the stipulations of the Plaintiff and Defendant made in open court on June 1, 1978 as to the agreement regarding alimony, IT IS FURTHER ORDERED AND ADJUDGED that the husband, DANIEL D. SHIMEL, shall pay to his wife, ANGELINE M. SHIMEL, as alimony-in-gross, in payment of her interest in the husband's various interests in any of the following corporations: R.B. Enterprises, Inc., Ann Bee, Inc., S.B. *383 K. Inc., Mac-4, Corp., and Royal-5, Inc. the sum of One-Hundred, Thirty-Four Thousand, Twenty-Five ($ 134,025.00) Dollars without interest, payable as follows: Payment of the sum of Ten Thousand ($ 10,000) Dollars upon execution of Judgment and the payment of One Hundred, Twenty-Four Thousand, Twenty-Five ($ 124,025.00) Dollars, payable over one hundred, twenty-one (121) months without interest at the sum of Twelve Thousand, Three Hundred ($ 12,300.00) Dollars per year, or One-Thousand, Twenty-Five ($ 1,025.00) Dollars per month, and not modifiable under any circumstances by either of the parties or by an Order of the Court, the first (1st) payment to commence upon the execution of this Judgment. The prior death of the wife shall not relieve the husband nor his estate from the payment of the obligation hereunder. Angeline intended that the $ 134,025 payment would be in exchange for her interest in Daniel's restaurants. Angeline's attorney filed a motion for rehearing of the motion to set aside the judgment for divorce on the grounds of fraud. On December 11, 1978, the motion was denied by Judge Gallagher. OPINION Former section 71(a) [3] includes in a wife's gross income *384 periodic payments received in discharge of a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under a divorce decree or a written instrument incident to the divorce. Section 215 allows a deduction to the husband for payments made to his wife which are includable in her income under section 71. Pursuant to a valid divorce decree, Daniel agreed to pay Angeline the sum of $ 134,025, $ 10,000 of which was payable upon execution of the judgment and the remainder of which was payable in periodic payments over a 121-month period. Daniel's payments are imposed under a decree of divorce as required by section 71(a)(1), and they qualify as periodic payments under section 71(c). Since Daniel's payments are periodic and are imposed under a decree of divorce, the only remaining question is whether the payments are in discharge of a legal obligation referred to in section 71(a) or are installment payments made *385 in satisfaction of a property settlement. The requirement that the payments be made in discharge of a legal obligation imposed "because of the marital or family relationship" means that they be in the nature of support rather than a property settlement. Beard v. Commissioner, 77 T.C. 1275, 1283 (1981); Bishop v. Commissioner, 55 T.C. 720, 724-725 (1971); secs. 1.71-1(b)(4) and 1.71-1(d)(3)(i)(b), Income Tax Regs. Payments which are part of a property settlement are capital in nature and, therefore, not taxable to the recipient. Yoakum v. Commissioner, 82 T.C. 128, 134 (1984); Thompson v. Commissioner, 50 T.C. 522, 525 (1968). Whether payments are in the nature of support or part of a property settlement does not turn on the labels assigned to the payments by the court in the divorce decree or by the parties in their agreement. Beard v. Commissioner, supra at 1283; Hesse v. Commissioner, 60 T.C. 685, 691 (1973), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975); Thompson v. Commissioner, supra at 525. The issue is a factual one *386 and requires an examination of all the surrounding facts and circumstances. Wright v. Commissioner, 62 T.C. 377, 389 (1974), affd. 543 F.2d 593 (7th Cir. 1976); Hesse v. Commissioner, supra at 691. State law defines property rights while Federal law determines the tax consequences which attend these defined rights. Sampson v. Commissioner, 81 T.C. 614, 618 (1983), affd. without published opinion 829 F.2d 39 (6th Cir. 1987); cf. Poe v. Seaborn, 282 U.S. 101, 110 (1930). It is therefore necessary to examine the law of Michigan. In Beard v. Commissioner, supra, we concluded that under Michigan law, a wife may acquire rights to a share of her husband's separately owned property upon divorce, and factors not necessarily related to her need, such as the duration of the marriage, fault, and relative contributions of the parties, may be considered in effecting an equitable distribution of the marital property. In determining the share of marital property to be awarded each spouse, Michigan courts consider "all the equitable factors involved," including "source of property, *387 contribution towards its acquisition, the years of married life, the needs of the parties, their earning ability and also the cause for divorce." Johnson v. Johnson, 346 Mich. 418, 78 N.W.2d 216, 222 (1956). See Wilkins v. Wilkins, 149 Mich. App. 779, 386 N.W.2d 677, 681 (1986); Ozdaglar v. Ozdaglar, 126 Mich. App. 468, 337 N.W.2d 361, 363 (1983). The property division need not necessarily be equal, but must be fair and equitable in light of the overall financial circumstances. McDermott v. McDermott, 84 Mich. App. 39, 269 N.W.2d 299, 300 (1978); Crane v. Crane, 17 Mich. App. 588, 170 N.W.2d 194, 196 (1969). See McLain v. McLain, 108 Mich. App. 166, 310 N.W.2d 316, 317 (1981). The assets of each party, as well as jointly owned marital property, are available for distribution. Bywater v. Bywater, 128 Mich. App. 396, 340 N.W.2d 102, 103 (1983). In the instant case the judgment, based upon the initial agreement between Daniel and Angeline, is less than a model of clarity for purposes of determining the issue before us. Likewise, the other evidence presented indicates *388 that the agreement was prepared after consideration of the various outcomes that might have resulted had the financial aspects of the divorce been dependent upon the decision of the state court after a consideration of all the evidence. As we stated in Beard: Unfortunately, because of the vexing problems which frequently arise in determining the nature and extent of a spouse's property rights under State law, this supposedly factual inquiry has all too often taken on a metaphysical aura as the courts have struggled to classify a particular payment as either support or property settlement, when, in reality, the payment possesses a hybrid nature sharing characteristics of both. * * * [Beard v. Commissioner, supra at 1284.] In making our determination we will look at the following factors which, if present, indicate that payments are in the nature of a property settlement rather than a support allowance. (1) The parties in their agreement (or the court in its decree) intended the payments to effect a division of their assets; (2) The recipient surrendered valuable property rights in exchange for the payments; (3) The payments are fixed in amount *389 and not subject to contingencies, such as the death or remarriage of the recipient; (4) The payments are secured; (5) The amount of the payments plus the other property awarded to the recipient equals approximately one-half of the property accumulated by the parties during marriage; (6) The need of the recipient was not taken into consideration in determining the amount of the payments; (7) A separate provision for support was provided elsewhere in the decree or agreement. Beard v. Commissioner, supra at 1284-1285, and the cases cited therein. The absence of one or more of the above factors may tend to indicate that the payments are more in the nature of a support allowance. Beard v. Commissioner, supra at 1284. The judgment of divorce provided that Angeline was to receive payment for Daniel's interests in five corporations. Daniel was concerned about retaining his interests in the restaurant franchises. The parties, in their agreement which was incorporated into the judgment, stated that the $ 134,025 was "in payment of her interest in the husband's various interests in any of the following corporations: R.B. Enterprises, *390 Inc., Ann Bee, Inc., S.B.K. Inc., MAC-4, Corp., and Royal-5 Inc." Angeline testified that she intended to get paid for her interest in Daniel's property. Daniel did not testify. His attorney testified in a manner that convinces us that, like any good attorney, he considered all of the possibilities when he drafted the settlement agreement. While he may have personally believed that his client was most vulnerable to alimony claims, we cannot fail to note the specificity of the quid pro quo language in the settlement agreement. We believe that this specificity outweighs the more general description as alimony. Angeline surrendered valuable property rights in exchange for the payments. As noted above, under Michigan law a wife may acquire rights to a share of her husband's separately owned property. Daniel and Angeline were married for over six years. The $ 134,025 awarded to Angeline was based upon the increase in the value of Daniel's restaurant interests during the marriage. We find that Angeline surrendered her equitable interest in Daniel's assets. The payments were fixed in amount and not subject to contingencies. The $ 134,025 amount was not modifiable or reviewable regardless *391 of Angeline's support needs. The payments were unsecured. We do not attach great significance to this under the circumstances. It appears that Daniel had substantial resources. The payments plus other property awarded to the recipient equal approximately one-half of the property accumulated during the marriage. Daniel's restaurant interests had increased in value by between $ 260,000 and $ 280,000 during the marriage. It is clear from the record that Daniel's attorney computed the $ 134,025 by referencing the increases in the value of the restaurant interests and dividing it in half. Although the precise amount of property accumulated during the marriage cannot be determined from the record, the record indicates that additional assets, including the marital home, a 10-acre property, insurance, and stocks, were divided more or less equally between Angeline and Daniel. Angeline's needs do not appear to have been a primary consideration in determining the amount of the payments. Angeline testified that no inquiry was made about her living expenses. Mr. Kutinsky testified that Angeline's health and need for support were a matter of concern to him and Daniel. But he also testified *392 that the $ 134,025 was derived from the increase in the value of Daniel's restaurant interests, and that Daniel wanted to retain his restaurant interests. This is no indication that permanent support had ever been discussed between the parties. Considering the fixed and limited nature of the monetary award, and the financial circumstances of the parties, we find that the support needs of Angeline were not a primary consideration for awarding her the $ 134,025. There is no separate provision for support, which is a factor tending toward a conclusion that the payments are in the nature of support. On the other hand, the state court may have determined that the property award sufficiently enabled Angeline to provide for herself. See Ozdaglar v. Ozdaglar, 337 N.W.2d at 363. An award of alimony is a matter within the discretion of the trial court, and one consideration is the amount of property awarded to the parties. Ozdaglar v. Ozdaglar, 337 N.W.2d at 361; McLain v. McLain, 310 N.W.2d at 318. In any event, we conclude that the majority of relevant factors discussed above indicate that the $ 134,025 was in the nature of a property *393 settlement. Daniel argues that Schottenstein v. Commissioner, 75 T.C. 451 (1980), requires us to conclude that Angeline did not surrender valuable property rights in exchange for the payments. Schottenstein is distinguishable from this case and it does not support Daniel's position. In Schottenstein, the taxpayers agreed, pursuant to a separation agreement incident to divorce, that the husband would pay his former wife $ 300,000 in installments "By way of property settlement." We looked to the nature of the payments and determined that, although the taxpayers had intended that the installment payments be treated as a division of property for Federal tax purposes, the payments were in the nature of support because the wife's property rights had been accounted for in other provisions of the agreement. We reviewed Ohio law and concluded that in Ohio, a wife does not acquire an equitable property interest in her husband's property. Schottenstein v. Commissioner, supra at 462-464. Conversely, in this case where Michigan law is applicable, Angeline had an equitable interest in property acquired by Daniel during their marriage. Beard v. Commissioner, supra. *394 We note that the taxpayer-wife in Schottenstein did not argue at trial or on brief that she was entitled to acquire an equitable interest in marital property. Daniel also argues that Beard v. Commissioner, supra, is distinguishable from the instant case in that in Beard, the length of the marriage was 18 years, neither the husband nor the wife owned property when they were married, and there was a separate provision for alimony. As noted above, the Michigan courts may consider many factors in determining the equitable share of marital property to be awarded to each spouse, and none of the above-mentioned factors are determinative. See Johnson v. Johnson, supra.
The payments in this case were made in recognition of Angeline's equitable rights to a share of Daniel's restaurant interests. The payments are not includable in Angeline's income under section 71 and are not deductible by Daniel under section 215. Decision will be entered for the petitioner in docket No. 4682-86. Decision will be entered for the respondent in docket No. 2631.87. Footnotes
1. On July 20, 1987, this Court granted petitioners' joint motion to consolidate the case at docket No. 4682-86 with the case at docket No. 2631-87.↩
2. Betty A. Shimel is a party solely because she filed a joint return with her husband.↩
3. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩